## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | |
| | : | |
| v. | : | **Crim. No. 05-0234 (RMU/DAR)** |
| | : | |
| **MICHAEL BATTLE,** | : | **Status hearing: 10-11-05, 10:00 a.m.** |
| **Defendant.** | : | |

## PROFFER AND MEMORANDUM IN SUPPORT OF PRE-TRIAL DETENTION

   ***COMES NOW***, the United States of America, by and through its Attorney, the United States

Attorney for the District of Columbia, respectfully to submit this proffer and memorandum in

support of its verbal motion to detain defendant Battle without bail pending trial.  Defendant is

charged by a grand jury original indictment with seven counts of federal felony drug crimes.  A status

hearing now is set before U.S. District Judge Ricardo M. Urbina on Tuesday, October 11, 2005, at

10:00.  If the Court does not decide the detention motion then and refers it to the Magistrate Judge,

a detention hearing has been set before U.S. Magistrate Judge Deborah A. Robinson that afternoon

at 1:30.  In support of our motion, we submit the following proffer of fact and memorandum of law:

## BACKGROUND

   1.    Police arrested defendant last Thursday, September 29, 2005, upon an open bench

warrant issued at the time of his indictment in June 2005 on various federal felony drug charges.

The indictment resulted from three sales to an under-cover police officer in March and April 2005,

each of about 62 grams of crack cocaine base.  In the space of less than a month, defendant made

$6600 from the sales, which totalled more than 175 grams of crack cocaine base.

   2.    Based on the sales and related acts, the grand jury indicted defendant Battle on three

charges of unlawfully using a telephone to facilitate committing a drug felony, in violation of 21

U.S.C. § 843; three charges of unlawful distribution of 50 grams or more of crack cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) & 841(b)(1)(A)(iii); and, one charge of unlawful distribution of crack cocaine base within 1000 feet of a school, in violation of 21 U.S.C. § 860. By statute, each of the three sales carries a ten-year mandatory minimum term in prison. The Court calendared this case before the Hon. Ricardo M. Urbina, U.S. District Judge.

3.     Following defendant's arrest, U.S. Magistrate Judge John M. Facciola arraigned him the next day. At that hearing, the Government asked the Court to hold defendant without bail pending trial, citing 18 U.S.C. § 3142(f)(1)(C). This authorises pre-trial detention when a defendant has been charged with an offense under the Controlled Substances Act, 21 U.S.C. §§ 801, *et seq.*, for which ten or more years in prison is set as punishment. The grand jury has charged defendant with four such offenses. Additionally, Magistrate Judge Facciola imposed a ten-day period of temporary detention because defendant committed the indicted drug crimes while paroled from his 17-year sentence for a 1992 conviction for robbery with a deadly weapon in Maryland. Defendant also has 1992 Maryland convictions for assaults with intent to murder and maim. A status hearing before Judge Urbina October 11, 2005, at 10:00 a.m.

## FACTUAL PROFFER

4.     On March 11, 2005, at about 3:10 in the afternoon, a sworn officer of the Metropolitan Police Department (MPD), acting under cover, spoke by telephone with defendant Battle. During the conversation, defendant and the under-cover officer (UC) agreed to meet for a sale of about 62 grams of crack cocaine base. The two spoke in coded phrases, "the same thing, the two," referring to two amounts of 31 grams of crack cocaine. The total of 62 grams of crack, often referred to as a "six-deuce" or a "sixty-two" is a standard mid-to-lower level wholesale quantity of

2

drugs equal to about one-sixteenth of a kilogram. It is enough to make at least 575-to-600 rocks of crack of a size commonly sold for $10 each. In the course of the phone call, defendant agreed to meet the under-cover officer in about half an hour in the neighborhood where Missouri Avenue, Madison Street, Seventh Street, and several other roads come roughly together, all in the northwest quadrant of the District. The sale took place after defendant and the UC met at 7th & Madison Streets, N.W., at about 4:00 that afternoon, March 11, 2005. In the sale, which occurred in a specially equipped police under-cover car, defendant sold the UC 58.5 grams of 80% pure cocaine base for $2200. The cocaine base appeared rock-like and in the form known as "crack." The UC car has been specially equipped with an audio-video recording camera, and a tape of the transaction clearly shows the exchange and defendant's face.

5.    On March 24, 2005, shortly before 5:30 in the evening, the UC again spoke by telephone with defendant Battle. During the conversation, defendant and the UC agreed to meet for a sale of about 62 grams of crack cocaine base. During the call, defendant agreed to meet the officer near where the last sale had taken place. When the UC got to this neighborhood, he spoke further by cell phone with defendant, who told him that uniformed police officers had been seen in the area, which now was "too hot" to conduct the sale. Instead, defendant told the UC to meet a few blocks away near Second & Hamilton Streets, N.W. The two eventually did meet at about 7:15p.m., and defendant sold the UC 60.3 grams of 74% pure crack cocaine base for $2200. Again, the sale in took place in the camera-equipped police UC car. The resulting video-tape clearly shows defendant. The grand jury indicted defendant for using the telephone to arrange a drug sale, for distributing these drugs, and for distributing the drugs within 1000 feet of the Cuno-Rudolph Elementary School.

6.    On April 8, 2005, shortly before 1:00 in the afternoon, the UC again spoke by

telephone with defendant Battle. During the conversation, defendant and the UC agreed to meet for a sale of about 62 grams of crack cocaine base, with the two to get together near 7th & Madison Streets, N.W., Washington, D.C. The two met a little before 3:30 that afternoon, and defendant sold the UC 60.5 grams of 63% crack cocaine base for $2200. This third sale also took place in the specially equipped police UC car. The resulting video-tape shows defendant.

7.      Further, defendant has two prior convictions for serious crimes of violence, and he seems to have spent much of the past decade in prison, having been paroled in 2004. In one case from Maryland Co., Md., police arrested defendant March 15, 1991, leading to a conviction for assault with intent to murder and assault with intent to maim, according to the bail agency. Defendant receive a ten-year sentence in April 1992.

8.      In the other case, also from Montgomery Co., Md., police arrested defendant April 2, 1991 – that's not three weeks after the assault arrest – and he ultimately was convicted of Robbery with a deadly weapon and a handgun crime. In January 1992, he received a 17-year sentence for the robbery and 18 months for the gun crime. What's key is that it appears defendant must have committed the robbery while on some type of release for the assault. Of course, he was on parole from his robbery sentence when selling crack to the under-cover officer as charged in this case.

9.      At the outset, it is worthwhile recalling Congress' intent in 1984 when it enacted the current version of the Bail Reform Act:

> Many of the changes in the Bail Reform Act reflect the . . . determination that Federal bail laws must . . . give the courts adequate authority to make release decisions that give appropriate recognition to the danger a person may pose to others if released. . . . The constraints of the Bail Reform Act fail to grant the Courts the authority to impose conditions of release geared toward assuring community safety, or the authority to deny release to those defendants who pose an especially grave risk to the safety of the community. . . . ***This broad base of***

> ***support for giving judges the authority to weigh risks to community
> safety in pretrial release decisions is a reflection of the deep public
> concern, which the Committee shares, about the growing problem
> of crimes committed by persons on release.***

See S.Rep. No. 225, 98th Cong., 2d Sess. 307, reprinted in 1984 U.S.Code Cong. & Ad.News 3182, 3486-3487. (Emphasis added.)[1]

      10.    No condition of release nor combination of them can ensure that defendant will not pose a danger to the community if released.  This is based, first, upon the presumption to that effect written into the Bail Reform Act.  18 U.S.C. § 3142(e) ("Subject to rebuttal by the person, it shall

---

[1]  Regardless why the government sought a detention hearing, the Court always must consider whether defendant's release is a danger to the community.  This point is made throughout the Bail Reform Act.  Section 3142(e), which authorizes detention without bail pending trial, states:

> If, after a hearing pursuant to the provisions of subsection (f) of this section, the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required ***and the safety of any other person and the community***, such judicial officer ***shall order*** the detention of the person before trial.

Emphasis added.  Similarly, § 3142(f) states:

> The judicial officer shall hold a hearing to determine whether any condition of combination of conditions set forth in subsection (c) of this section will reasonably assure the appearance of such person ***and the safety of any other person and the community*** –
>
>     (1) upon motion of the attorney for the Government, in a case that involves,
>
>         (C) an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act (21 U.S.C. § 801 *et seq.*) . . .

Emphasis added.  This point is again made in § 3142(g), **Factors to be considered**, which states:

> The judicial officer shall, in determining whether there are conditions of release that will reasonably assure the appearance of the person as required ***and the safety of any other person and the community***, take into account the available information concerning –
>
>     (1) The nature and circumstances of the offense charged, including whether the offense is a crime of violence or involves a narcotic drug;
>     (2) the weight of the evidence against the person;
>     (3) the history and characteristics of the person . . .
>     (4) ***the nature and seriousness of the danger to any person or the community that would be posed by the person's release. . . .***

(Emphasis added.)

be presumed that no condition or combination of conditions of release will reasonably assure the . . . safety of the community if the judicial officer finds that there is probable cause to believe that the person committed an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act."). This presumption, triggered by indictment, is re-inforced overwhelmingly by the facts of the case.

11.    Second, defendant is engaged in the drug trade, and is a threat to return to it if released: he has no regular work -- the bail agency report lists him as unemployed for a year. Rather, he appears instead to make a living selling narcotics. Although defendant is nearly 34 years old, he says he has lived with her mother in Ft. Washington, Md., for the past two years – about the time since he was paroled. These facts embody the danger that defendant's release poses. As the legislative history of the 1984 Bail Reform Act amendments shows:

> [T]he language referring to the safety of the community refers to the danger that the defendant might engage in criminal activity to the detriment of the community. The committee intends that the concern about safety be given a broader construction than merely danger of harm involving violence. . . . The Committee also emphasizes that the risk that a defendant will continue to engage in drug trafficking constitutes a danger to the "safety of any other person or the community.

S.Rep. No. 225, *supra*, at 3195-3196.

12.    Against these facts, we can expect defendant principally to rely on community ties to overcome the presumption that he should be held pending trial. Again, the framers of the 1984 Bail Reform Act thought differently. "The Committee also notes with respect to the fact of community ties that it is aware of the growing evidence that the presence of this factor does not necessarily reflect a likelihood of appearance, and has no correlation with the question of the safety of the community." S.Rep. No. 225, supra, 3207. Nor is it clear why community ties, which stopped

defendant not at all from selling drugs as described above, now will keep him from doing so again.

In summary, defendant's release constitutes a clear, convincing danger to the community. The Court should order him detained without bail pending trial.

***WHEREFORE***, the Government respectfully prays this Honorable Court to detain defendant without bond pending trial.

Respectfully submitted,

_____
KENNETH L. WAINSTEIN
UNITED STATES ATTORNEY
D.C. Bar No. 451058

_____
BARRY WIEGAND, Bar No. 424288
Assistant U.S. Attorney
Narcotics Section
555 Fourth Street, NW, Fourth floor
Washington, D.C. 20001
(202) 514-7315
(202) 514-8707 (fax)
William.B.Wiegand@USDoJ.Gov

## CERTIFICATE OF SERVICE

I certify that I have caused service of the foregoing to be made by having a copy of it deposited in the U.S. mails, first-class postage affixed, and addressed to counsel for defendant, Mr. Carlos Vanegas, Esq., AFPD, Office of the Federal Defender, 625 Indiana Avenue, N.W., Suite 550, Washington, D.C. 20004; (202) 208-7500; (202) 208-7515 (fax); Carlos_Vanegas@fd.org (E-mail); this 20th day of December 2004. I also have e-mailed and telefaxed a copy of the motion to Mr. Vanegas.

_____
Barry Wiegand, AUSA