## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,          :
                                   :
    v.                             :
                                   :   CRIMINAL NO. 05-234
MICHAEL A. BATTLE                  :          (RMU)

## DEFENDANT BATTLE'S MOTION TO COMPEL PRODUCTION OF DISCOVERABLE MATERIAL, TO ENFORCE SUBPOENA AND, IN THE ALTERNATIVE, TO PRECLUDE TESTIMONY OF THE HE ALTERNATIVE, TO PRECLUDE TESTIMONY AND REPORT OF

COMES NOW the Defendant herein, Michael A. Battle, by and through his undersigned

counsel, and respectfully requests that this Honorable Court order the Federal Medical Center,

Devens, Massachusetts, and/or the United States Attorney's Office of the District of Columbia,

to immediately produce to undersigned counsel, or to her expert, Dr. Lanning Moldauer, all of

the data underlying two MMPI's (Minnesota Multiphase Personality Instruments),.  Specifically,

undersigned counsel requests that FMC Devens produce all scoring and other data related to the

first MMPI, apparently administered in 2006, and produce copies of the original tests answers

(test protocols) given by Mr. Battle in both MMPI's (i.e. the MMPI given Mr. Battle in 2006 and

the second MMPI administered in his most recent admission to FMC Devens in the spring of

2007).

These requests are made pursuant to Fed. R. Crim. P. 16 and 17, and the Fifth and Sixth

Amendments to the United States Constitution.  Should FMC Devens by and through Dr. Shawn

Channell, the examining psychologist, or his supervisor, Dr. Paul Anderson, or the United States

1

Attorney's Office, refuse or fail to produce this data in sufficient time for its use at the

competency hearing, scheduled for Tuesday, June 12, 2007, undersigned moves this Honorable

Court to (1) order the United States Attorney Office to obtain and turn over the documents

requested, (2) enforce the subpoena served twice now upon Devens (On June 6 and June 7,

respectively) and, (3) in the alternative, to preclude any testimony of the Government's expert,

Dr. Shawn Channell, at the contested competency hearing.

### Procedural History of the Defense Requests

1.   This matter was originally scheduled for a contested mental competency hearing on

March 19, 2007.  The matter was subsequently re-scheduled when the Government asked for a

renewed competency evaluation at the Federal Medical Center, Devens, Massachusetts.  Because

Mr. Battle would be of necessity removed from the jurisdiction for the evaluation, it became

clear that the March 19th date was no longer feasible because undersigned counsel and her own

expert would not have sufficient access to Mr. Battle after he returned from his examination at

Devens.  Morever, time was needed for both parties to conduct discovery in preparation for this

hearing.

2.    The matter was then re-scheduled, by consent of the parties, first to April 26, 2007,

and then to its current date of June 12, 2007, so that undersigned counsel's expert could also re-

examine Mr. Battle, and so that the parties could exchange discovery materials.

3.    Undersigned counsel received the competency evaluation report of Dr. Shawn

Channell directly from FMC Devens by facsimile (minus pages 7 and 8) from Dr. Channell on or

about March 28, 2007.  She promptly forwarded it to her own expert, Dr. Lanning Moldauer,

who informed her that, because an MMPI had been administered, he needed to see a copy of the

defendant's original test answers, otherwise known as the "test protocols, " in order to evaluate several aspects of Dr. Channell's findings: (1) the method of scoring of the test, (2) the conclusions drawn by Dr. Channell about the test (e.g. the "result), (3) whether the results of the test could be considered valid, or had to be considered invalid because an insufficient number of questions had been answered (known as "omitted questions'); and (4) whether the test could properly be scored in the presence of a certain number of "omitted" answers.  These are all important questions material to the defense position in this case, as the MMPI documentation turned over so far conflicts with (and contradicts)  Dr. Channell's position that the test results must be considered invalid, a position taken in his March 28, 2007 report, and benefit the defense in other ways as well, which shall be developed at the contested competency hearing. [1]

4.   Shortly after receiving Dr. Channell's report, undersigned counsel contacted him and spoke with him by telephone, making her request for the test protocols for the second MMPI (not at that time knowing there had been a previous MMPI administered).  She was told there would be "no problem" in providing them.

5.    In conversations with Perham Gorji, Esquire, the assistant United States Attorney

---

[1]   These considerations are important because Dr. Channell finds Mr. Battle to have a personality disorder which, in his opinion, does not interfere in his ability to consult with counsel, whereas the test results provided to date indicate mental illness in conformity with Dr. Moldauer's finding that Mr. Battle has a mental illness which interferes in his ability to effectively consult with counsel and to assist in his own defense.  It is for this reason that the defense has requested copies of the original answers to second MMPI and all documentation, including original test answers, relating to the first MMPI, which Mr. Battle recently stated was administered in 2006 during his first competency evaluation at FMC Devens.

The lack of production of these materials is not meant as a criticism of Mr. Gorji.  Given undersigned counsel's interactions with FMC Devens, it is entirely understandable that he did not obtain the materials until recently, despite requesting them in proper time.

assigned to this case, she then made the same request of him, not having received the test

protocols from Dr. Channell.  HE also did not evidence any disgreement with her request nor

indicate that these materials would not be provided.

6.    Although Mr. Gorji persistently asked undersigned counsel to comply with her

discovery obligations, requesting all of Dr. Moldauer's notes underlying his report and any

updated reports  – all of which have been turned over to the extent they exist – he was slower in

providing any of the discovery materials undersigned counsel had requested – that is any and all

competency evaluations done by Government experts and all documentation relating to any

testing of Mr. Battle, particularly the scoring materials and test protocols.

7.    At length, undersigned counsel received electronic notice of a letter dated May 30,

2007, filed by Mr. Gorji with the Court, stating that "[e]nclosed are copies of Dr. Shawn

Channell's second report regarding Michael Battle, and the notes pertaining to that report."

8.    On June 1, 2007, when the materials referenced in Mr. Gorji's letter of two days

earlier had not arrived by mail or otherwise, undersigned counsel contacted all three supervisors

(Patricia Stewart, Jeffrey Ragsdale and Anthony Alexis), asking for the discovery materials she

had been requesting for months.  Mr. Alexis was kind enough to go through Mr. Gorji's files,

copy the materials and leave them for her to pick up on Monday, June 4, 2007.  Upon obtaining

the materials, and discerning that the test protocols for the MMPI's were not among them,

undersigned counsel again contacted Messrs. Ragsdale and Alexis to request these materials,

noting that she had requested them several months prior.   She also sent an email to both,

detailing the specific requests.

9.    Not hearing from either supervisor, undersigned counsel called FMC Devens, and

requested that copies of the test protocols be sent to her, noting that it appeared a prior MMPI had been performed as well, and asking for any and all documentation relating to that test, including the test protocols. She spoke with Jenn Gaucher, Dr. Channell's assistant, who assured her that Ms. Gaucher would obtain the materials, fax them to the Government and the matter would be taken care of no later than the following morning.   In the meantime, Ms. Gaucher apparently contacted Mr. Alexis and informed him that she had spoken with another psychologist at Devens and that they had no intention of producing these materials to undersigned counsel counsel.  The reason given was that "if the test results got out there, people could manipulate them" and that Devens therefore had a policy of not releasing test protocols.  Mr. Alexis asked Ms. Gaucher to call undersigned counsel and inform her of this so that she could take appropriate action.  Ms. Gaucher did not see fit to call.

10.   At the end of that same day, June 4, 2007, undersigned counsel called Mr. Alexis to inform him that Ms. Gaucher had said she would be faxing the materials to him for delivery to undersigned counsel.  It was at that juncture that Mr. Alexis told undersigned counsel that Devens was not going to comply with her request, despite its earlier agreement to do so.

11.   The following day, undersigned counsel faxed a subpoena for the needed materials to Dr. Channell at FMC Devens.  She also called his assistant, Ms. Gaucher, and left her a message, informing her that a subpoena had been faxed, and asking her to call undersigned counsel and let her know if Devens intended to comply with the subpoena.  Ms. Gaucher never returned the call.  On June 6, 2007, undersigned counsel called Dr. Paul Anderson, Dr. Channell's supervisor, and left a message informing him that the subpoena had been faxed and likewise asking him to return her call to indicate wether Devens intended to comply and to

discuss the matter.  He finally responded (at 6:00p.m. this date) and informed undersigned

counsel that he is leaving tonight for several weeks, and that she must now re-fax the subpoena to

yet another person who will now be acting Chief of the Psychology Department, Dr. Jeff

Sonnega.  She did so promptly.

     12.    At this juncture that, having exhausted all reasonable efforts to obtain these

documents, material to the defense and producible under Rules 16 and 17, undersigned counsel is

forced to file the instant Motion to Compel.


**Argument**

     13.    Fed. R. Crim. Pro. 16(a)(1)(D) provides that upon the request of the defendant, the

Government "shall permit the defendant to inspect and copy or photograph any results and

reports of physical or mental examinations, and of scientific tests or experiments, or copies

thereof, which are within the custody, or control of the Government, the existence of which is

known, or by the exercise of due diligence may become known, to the attorney for the

Government, and which are material to the preparation of the defense, or are intended for use by

the Government in its case in chief at the trial."

     14.    In the instant case, the answers that Mr. Battle provided on any and all MMPI's are

"results," of the test-giving, and are certainly, in light of the proffer of relevance and pertinence

provided in paragraph 3, above, material to preparation of the defense case in this contested

competency hearing.  Moreover, the MMPI ( the second test) is directly referred to in Dr.

Channell's report, and is thus a part of his conclusions in the final analysis. [2]  These test

protocols are analogous to the underlying documentation in a DNA case, wherein both courts in

both the United States District Court and the Superior Court in the District of Columbia have

routinely ruled that, in order for the defense expert properly to perform his or her analysis, all of

the underlying documentation, quite beyond production of the FBI's or Cellmark's reports of

results, must be produced obtained and produced to the defense.   While undersigned counsel

understands that FMC Devens is unwilling to produce the materials directly to her, and insists on

providing them to the Government to ensure that it, too, has them – a procedure followed by the

FBI in DNA cases – the defense is still entitled to them.

      15.    As a legal matter, in an analogous case out of the Superior Court, *United States v*

*Jackson*, 768 A.2d 580 (D.C. 2001), the defense sought production of underlying documentation

beyond that contained in the DEA 7 in a drug case.  Specifically, it sought the DEA 86, a

document that provides, unlike the DEA 7, a more "detailed description of the tests performed,

broken down to include, among other things, the 'evidence sampling procedures,' 'qualitative'

analysis, and 'quantitation,' with the latter differentiated by 'method #' and various weight

classifications."  *Id*. At 583.  The court ruled that "[a]lthough the DEA 7 is the 'official' report

 . . . of analysis of a controlled substance' which the Government routinely introduces at trial to

comply with D.C. Code 33-556, the DEA 86 is no less a report of the results of the chemical

analysis in a format partly mirroring the DEA 7.  The difference of note, as we explained, is that

---

     [2]  Whether Dr. Channell's conclusions are that the test results are, or not, invalid because
of the results of the test protocol, the defense expert is still entitled to inspect them to determine
if he is in agreement with the conclusions reached by Dr. Channell, particularly since there are
reasons to doubt Dr. Channell's conclusions on this score.

the back side of the form provides a more detailed description of the analyses (qualitative and

quantitative) yielding the particular results.  Setting forth as it does the detailed tests and results

summarized in conclusory fashion by the  DEA 7, the DEA 6 is discoverable under the broad

command (any results or reports) of Rule 16 (a)(1) (D)."  *Id.*

16.   In the instant case, the "material" tested is Mr. Battle himself, and his answers to the

MMPI, as with the DEA 86, provide the results of the testing which form the specific basis for

the conclusion reached by Dr. Channel in his report.  The test protocols are thus discoverable

under the "braod command" of Rule 16 and should be produced by the Government to the

defense, since they can be obtained with reasonable diligence from FMC Devens.

17.   Even if Devens continues to refuse to produce the test protocols to the United States

of America, it must produce them to this Court, pursuant to its subpoena power under Fed. R.

Crim. Pro. 17.   Compliance with the subpoena in this case is not oppressive or burdensome, as it

does not require production of thousands of pages of documents in a short period of time.

According to the defense expert in this case, such protocols are routinely produced in federal

cases.  That Devens has a policy of not giving out this information "because if it gets out there,

the test results might be manipulated" does not make sense.  No one has the test questions, they

are standarized and cannot be changed in any event, and no one has asked for the originals, only

copies thereof.  The originals, one would expect, would be maintained by Devens.   Moreover,

undersigned counsel would have no idea of how to manipulate the data (even if she were inclined

to do so, which would be utterly unethical and which she would never do) and nor would her

very well respected defense expert, who would also be subject to ethical proscriptions.  Perforce,

Dr. Moldauer has stated to undersigned counsel that the tests results cannot be manipulated in

any way, in any event, under the current request. The defense's right to this information clearly outweighs Devens' policy. Moreover, if Devens' concern is that the test results might find their way into the general public, or to someone outside the immediate parties and experts in the case, the Court can always alleviate that concern by imposing a protective order. Therefore, undersigned counsel respectfully submits that this Court should enforce its subpoena in this case and issue an order to FMC Devens to show cause why it should not be held in contempt for failure to honor the subpoena served upon it.

18.   In the alternative, and failing all else, if the Government does not or cannot obtain the requested discovery materials, and if Devens will not comply with this Court's process and produce the requested materials, undersigned counsel requests that the Court preclude Dr. Channell's testimony. If the materials are not produced, Mr. Battle's confrontation rights are not merely abridged, but are entirely eclipsed. The Government's expert cannot be effectively challenged when he renders conclusions premised upon results he will not turn over, thus depriving the defendant of the due process of law, of the right to the effective assistance of counsel, of his right to confront the witnesses against him, in short of the full panoply of to fundamental fairness embedded in the Sixth Amendment.

WHEREFORE, the foregoing premises having been considered, Mr. Battle respectfully requests that this Honorable Court in full all the relief requested herein.

Respectfully submitted,

Frances M. D'Antuono
218 Seventh Street, S.E.
Washington, D.C. 20003

9

(202) 544-6332
(202) 907-6332 (cell)
Fdantuono@msn.com

Counsel for Michael A. Battle

**Certificate of Service**

     I hereby certify that a true and correct copy of the foregoing Motion was served via electronic filing, this 7th day of June 2007, upon Perham Gorji, Esq., United States Attorney's Office, 555 4th Street, N.W., Washington, D.C.  and by facsimile upon Jeffrey Ragsdale, Esquire, Supervisory United States Attorney, 555 4th Street, N.W., Washington, D.C. 20530, and upon the chambers of the Honorable Ricardo M. Urbina, via electronic filing, this same date.

Frances M. D'Antuono_____

10