UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v. : | Criminal Action No.: 05-0234 (RMU) |
| : | |
| MICHAEL BATTLE, : | |
| : | |
| Defendant. : | |

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

**I.  INTRODUCTION**

This matter came before the court for evidentiary hearings on the defendant's competency to stand trial on June 12, 2007 and September 6, 2007.  Dr. Lanning Moldauer, a clinical psychologist, testified as an expert witness for the defendant.  Dr. Shawn Channell, a forensic psychologist, and Dr. Robert Benedetti, a clinical psychologist, testified as expert witnesses for the government.  Without objection, the court admitted into evidence Defense Exhibits 1 (Dr. Moldauer's Resume), 2 (Documentation of a Telephone Conversation of the Defendant), 3 (May 25, 2006 MMPI Report), 4 (Feb. 20, 2007 MMPI Report), 7 (Caldwell Report on Feb. 20, 2007 MMPI), 11 (Federal Medical Center Devens Record) and 12 (Dr. Benedetti's Mar. 27, 2006 Report), and Government Exhibits 4 (May 25, 2006 MMPI Report), 5 (Evaluation of Competency to Stand Trial-Revised Report ), 9 (Dr. Channell's Mar. 21, 2007 Report), 10 (Feb. 20, 2007 MMPI Report), 14 (Dr. Moldauer's May 30, 2007 Notes), 11 (Revised Competency Assessment) and 18 (Graham, John R. *MMPI-2 Assessing Personality and Psychopathology*, 24-25 (2006)).  Upon consideration of the arguments of counsel, the exhibits admitted into evidence, the testimony of the witnesses, the record and the court's observations of the defendant, the court makes the following findings of fact.

## II.  FINDINGS OF FACT

1. On September 30, 2005, the defendant, Michael Battle, was arraigned on three counts of unlawful use of a communications facility (21 U.S.C. § 843(b)), three counts of unlawful distribution of 50 or more grams of cocaine base (21 U.S.C. § 841(a)(1) and 21 U.S.C. § 841(b)(1)(A)(iii)) and one count of unlawful distribution of cocaine base within 1000 feet of a school (21 U.S.C. § 860(a)). He pleaded not guilty to all counts.

2. On January 17, 2006, the defendant requested an appointment of new counsel, which the court granted, appointing Frances D'Antuono to replace Carlos Vanegas.

3. On March 24, 2006, the court granted a joint motion for an examination of the mental competency of the defendant.  In accordance therewith, Dr. Robert Benedetti, Chief of Forensic Legal Services for Saint Elizabeth's Hospital of the Department of Mental Health, conducted a competency screening examination of the defendant on March 27, 2006.  Def. Ex. 12 at 1.  Based upon a 50-minute interview with the defendant, Dr. Benedetti concluded that the defendant's competency was not impaired.  *Id.* at 2-3.  Dr. Benedetti testified to this effect at the competency hearing.  Sept. 6, 2007 Tr. at 243.

4. On March 30, 2006, the court granted the defendant's unopposed request for further evaluation of the defendant's mental health.

5. On June 28, 2006, Dr. Channell filed a competency report based on his evaluations of the defendant from May 9, 2006 through June 8, 2006 during the

defendant's stay at Federal Medical Center at Devens, Massachusetts ("Devens"). Gov't Ex. 9 at 2.  He reported that the defendant interacted appropriately with staff and other inmates and exhibited no behavior consistent with a major mental illness.  *Id.* at 115.

6. Dr. Channell administered the Minnesota Multiphasic Personality Inventory: Second Edition ("MMPI-2") to the defendant to assess his personality characteristics and emotional adjustment.  *Id.* at 121.  After the test was scored, the index used to assess the validity of responses appeared elevated, indicating that the defendant exaggerated mental health symptoms.  *Id.* at 122-24.

7. Dr. Channell also administered the Evaluation of Competency to Stand Trial: Revised ("ECST-R") test.  *Id.* at 106.  The ECST-R assesses the defendant's understanding of courtroom proceedings, his ability to make decisions unimpaired by mental illness and his ability to cooperate with his attorney.  *Id.*  The defendant demonstrated a factual understanding of courtroom proceedings.  *Id.* at 139-40.

8. Dr. Channell interviewed the defendant's attorney to assess her concerns about the defendant's competence.  *Id.* at 104.  She stated that she and the defendant had difficulty interacting; in particular, he could not focus on the government's evidence and was frequently distracted by irrelevant legal minutiae.  *Id.* at 109.

9. The defendant represented to Dr. Channell that he believes he made a mistake in accepting a plea bargain for a prior offense that resulted in his incarceration for ten years.  *Id.* at 137.  The defendant stated that he is, thus, hesitant to accept a plea and risk repeating his error.  *Id.* at 163.  Dr. Channell concluded that,

although the defendant may present unrealistic expectations regarding the probable outcome of his case, this does not render him incompetent. *Id.* at 103. Dr. Channell stated that defendants in Mr. Battle's situation may focus on irrelevant details in the evidence when they have no realistic defense. *Id.* at 157. This, however, in Dr. Channell's judgment, does not reflect an impairment of competence by psychotic thinking, delusional beliefs or other psychological symptoms. *Id.* at 171.

10. Dr. Channell ultimately diagnosed the defendant with alcohol and cannabis abuse and Adult Antisocial Behavior but concluded that a mental disorder did not impair the defendant's competency as he had presented no symptoms congruent therewith. *Id.* at 171-72.

11. On July 24, 2006, defense counsel indicated that she would seek an independent evaluation of the defendant's competence.

12. On November 21, 2006, the defendant's expert Dr. Moldauer issued a report stating that the defendant was not competent to stand trial based on the defendant's inability to work effectively with his attorney because of delusions. Jun. 12, 2007 Tr. at 29. Dr. Moldauer observed the defendant at an interview held October 13, 2006, a meeting between the defendant and his attorney on November 17, 2006, and a second interview on May 30, 2007. *Id.* at 17. He also contacted the defendant's mother, who described the defendant as having grown increasingly religious and difficult to communicate with in the past two years. *Id.* at 21. Dr. Moldauer reported that on the first of the two occasions he met the

defendant, the defendant presented a both grandiose and fatalistic personality. *Id.* at 19. The defendant argued incessantly with his attorney; he declared that the outcome of his case was "ordained"; and he stated that, if incarcerated, he would be a "messenger of God" in prison. *Id.* at 20. In the second interview, the defendant was unresponsive to Dr. Moldauer's questions, which Dr. Moldauer attributed to the defendant's resentment of him for supporting his attorney's incompetence defense. *Id.* at 28.

13. On March 21, 2007, Dr. Channell issued a second report on the defendant's competency, based on evaluations taken from February 7, 2007 through March 9, 2007. Gov't Ex. 9 at 1. In the report, Dr. Channell indicates that he administered three new tests: another MMPI, the Revised Competency Assessment Instrument ("CAI") and part of the MacArthur Competence Assessment Tool ("MacArthur"). *Id.* at 2. In this MMPI, the defendant responded both true and false to 95 out of the 537 questions on the test. *Id.* at 3. As this corrupted the validity scales for the test, Dr. Channel reports that it rendered the test useless. *Id.* The results of the CAI demonstrated that the defendant understood the nature and consequences of the charges against him and court proceedings. *Id.* at 6. The MacArthur could not be completed, as the defendant became frustrated and refused to complete the test. *Id.* at 7.

14. Dr. Channell also considered Dr. Moldauer's conclusion that the defendant's religious delusions impaired his competency. Upon questioning by Dr. Channell, the defendant denied that he believes he has a special relationship with God. *Id.*

at 4. The defendant also did not behave in a manner indicative of religious delusions during either of his stays at Devens. *Id.* Dr. Channell stated that for religious beliefs to constitute delusions they must be extreme and beyond those generally accepted by other religious individuals. *Id.* And even if a subject does present religious delusions, he explained, for them to amount to a mental defect or disease, they must significantly impair the individual's functioning in daily life. Sept. 6, 2007 Tr. at 163-64.

15. Dr. Channell stated that the behavior Dr. Moldauer characterized as delusional was more consistent with antisocial personality disorder and narcissism, demonstrated by criminal behavior, deceitfulness, impulsivity, irritability, aggressiveness, consistent irresponsibility, reckless disregard for safety of self or others and lack of remorse. Gov't. Ex. 9 at 5. Dr. Channell concedes that the defendant becomes uncompromising, uncooperative, argumentative and irritable when confronted with the facts of his case. *Id.* at 9. But such behavior stands in contrast to that expected of a religiously fatalistic individual, who would usually be apathetic in these circumstances. *Id.*

16. Ultimately, Dr. Channell reaffirmed his conclusion that the defendant is not presently suffering a mental defect or disease impairing his competence. *Id.* at 10.

17. At the competency hearing, Dr. Moldauer and Dr. Channell testified, largely reiterating their observations and conclusions from their reports. They agreed that the defendant is not malingering. But, beyond the competing diagnoses already mentioned, they disagreed on four additional matters.

18. First, although Dr. Channell did not consider the first MMPI helpful because the validity scale was elevated indicating the insincerity of responses, Dr. Moldauer did credit the MMPI. Dr. Moldauer argued that the validity scale was artificially elevated because of the defendant's mental defects. Jun. 12, 2007 Tr. at 50. Dr. Channell maintains, and the court agrees, that because the validity scale has been refined for the specific purpose of excluding answers that are likely to be chosen by the subject because of a mental defect, the validity scale is not artificially elevated. Sept. 6, 2007 Tr. at 121.

19. Second, Dr. Moldauer cited as symptomatic of delusion the defendant's declaration, recorded on a telephone conversation in Devens, that he suspected the medical facility of experimenting on him. Jun. 12, 2007 Tr. at 36. Dr. Channell maintains, and the court agrees, that the defendant was referring to the facility's request for a blood sample from him to conduct blood testing, which the defendant denied the day of the telephone call in question. Sept. 6, 2007 Tr. at 118.

20. Third, Dr. Moldauer stated that the results from the second MMPI were creditable, despite the fact that the plaintiff answered 95 questions on the test as both "True" and "False," rendering the validity scale unreliable. Jun. 12, 2007 Tr. at 66. Additionally, Dr. Moldauer argued that in double answering 95 questions, the defendant demonstrated a streak of paranoia marked by delusions. *Id.* Dr. Channell stated that he could not use the second MMPI at all for evaluation purposes because the validity scale was compromised. Sept. 6, 2007 Tr. at 146.

      He further maintained that there were numerous alternative explanations for the defendant's action besides paranoid delusion including anxiety, boredom, nervousness and irritability. *Id.* at 168-71. The court concurs with Dr. Channell.

21. Fourth, Dr. Channell testified that the past mental health history of a defendant is relevant to his present state of competence. *Id.* at 113, 140. For that reason, Dr. Channell requested but ultimately did not locate any mental health records pertaining to the defendant. *Id.* at 107. Dr. Moldauer, on the other hand, expressed his opinion that mental health history was not directly relevant to a competency exam, as legal competence focuses on the defendant's present state only. *Id.* at 38.

22. Defense counsel also questioned Dr. Channell about the reference in his notes to the defendant's statement that his future would be determined on "judgment day." *Id.* at 205. Dr. Channell testified that he did not consider this to be indicative of religious delusion, as the statement has alternative meanings and the religious associations with the phrase did not manifest in any other significant aspect of the defendant's behavior. *Id.*

23. Dr. Channell also rebutted Dr. Moldauer's testimony that the defendant suffered from paranoid delusions of persecution by noting that the defendant had told Dr. Moldauer, in response to questioning, that he did not believe someone would lie to have him convicted. *Id.* at 163.

24. Dr. Channell testified that in his conversations with the defendant the defendant has disclosed that he believes he might be able to reach a bargain with the

government in which he receives some jail time but spends a larger portion of time at a halfway house. *Id.* at 163. Dr. Channell cited this as evidence of the defendant's understanding of the consequences of the pending criminal charges and his capacity to rationally participate in his case.

25. Finally, the court finds by its own observations that the defendant's demeanor was controlled, responsive and appropriate to the testimony and arguments heard during the competency hearing.

Based on the foregoing findings of fact and an application of the appropriate law, the court makes the following conclusions of law.

### III. CONCLUSIONS OF LAW

1. "Competence to stand trial requires 'sufficient present ability to consult with [a] lawyer with a reasonable degree of rational understanding and . . . a rational as well as factual understanding of the proceedings.'" *United States v. Caldwell*, 543 F.2d 1333, 1348 (D.C. Cir. 1974) (quoting *Dusky v. United States*, 362 U.S. 402, 402 (1960) and citing *Pouncey v. United States*, 349 F.2d 699, 701 (D.C. Cir. 1965)). The government has the burden of proving by a preponderance of the evidence that the defendant possesses the competence to stand trial. 18 U.S.C. § 4241(d); *United States v. Velasquez*, 885 F.2d 1076, 1089 (3d Cir. 1989).

2. In determining whether a defendant possesses competence, a court must consider a number of factors, including: (1) evidence of a defendant's irrational behavior; (2) any prior medical opinion on the defendant's competence to stand trial and (3) the defendant's demeanor at trial and/or hearings. *Drope v. Missouri*, 420 U.S.

162, 181 (1975). "It is the duty of the District Court to make a specific judicial determination of competence to stand trial, rather than accept psychiatric advice as determinative on this issue." *United States v. David*, 511 F.2d 355, 360 n.9 (D.C. Cir. 1975).

3. As for the allegedly irrational behavior of the defendant, Dr. Channell testified that he knows of no time that the defendant ever manifested religious delusions during two one-month stays at Devens medical facility. During his multiple interviews with the defendant, Dr. Channell has observed the defendant and, while confirming Dr. Moldauer's and defense counsel's assessment of his recalcitrant and irritable temperament, concluded that the defendant can participate in his defense.

4. Defense counsel makes much of the defendant's uncooperativeness with his attorney, but "uncooperativeness with one's counsel does not alone prove an inability to communicate." *Caldwell*, 543 F.2d at 1349 n.70. Likewise, a defendant's scattered usage of religiously-associated phrases such as "ordained" and "judgment day" and "messenger of God" does not, even when combined with an explosive and uncooperative temperament, demonstrate a lack of competency. *See People v. Leonard*, 157 P.3d 973, 992 (Cal. 2007) (affirming determination of competency despite expert psychiatrist's equivocation on whether the defendant suffered a "severe delusional disturbance" or was merely "very religious").

5. As for prior medical opinion on the defendant's competence to stand trial, the court is unaware of any such records. Moreover, the parties have not introduced

        any evidence regarding mental health history records of the defendant, and when Dr. Channell requested mental health records for the defendant, none were produced.

6.     As for the defendant's observed demeanor, Dr. Moldauer testified that the defendant became reticent during his second interview. Dr. Moldauer attributed his silence to the defendant's disagreement with his diagnosis of him as incompetent. The court finds this to be further evidence that the defendant can control his behavior regarding his "delusions." Additionally, the court notes that its own observations of the defendant at the hearings – throughout which the defendant appeared responsive and appropriately controlled – conform with this conclusion.

7.     The evidence clearly supports, and defense counsel does not contest, that the defendant presently possesses a rational, factual understanding of the proceedings. The results of the ECST-R and CAI factual competency tests are not disputed, and they indicate that the defendant understands the roles and procedures involved in a criminal trial.

8.     Based on the above and the evidence cited in the findings of fact, the court cannot conclude that the defendant's religious beliefs are the product of paranoia or delusion so severe as to impair his ability to participate effectively in his defense with his attorney. In short, the defendant's demands on his counsel and expectations for trial may be wrongheaded without also being delusional.

9.     For these reasons, the court finds by a preponderance of the evidence that the

defendant presently possesses competence and concludes that he has the capacity to stand trial.

DATE: September 20, 2007                                   Ricardo M. Urbina
                                                        United States District Judge