## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA, :
          :
 v.        :
          : CRIMINAL NO. 05-234
MICHAEL A. BATTLE   :   (RMU)

## JOINT PRETRIAL STATEMENT

### March 18, 2008

**Jeff Pearlman**      **Frances M. D'Antuono**
**Room 4213**       **218 7th Street, S.E.**
**555 4th Street, NW**    **Washington, D.C. 20003**
**Washington, D.C. 20530**  **fdantuono@msn.com**
**jeffrey.pearlman@usdoj.gov** **(202) 544-6332**
**(202 353-2385**

## JOINT STATEMENT OF THE CASE

   The government alleges that on March 11, 2005, Michael Battle arranged with an

undercover officer by telephone to sell the undercover officer cocaine base. On that same day,

Mr. Battle met the undercover officer in the area of 7th and Madison, NW, and sold him more than

50 grams of cocaine base.

   On March 24, 2005, Mr. Battle again arranged with an undercover officer by telephone to

sell the undercover officer cocaine base. On that same day, Mr. Battle met the undercover officer

in the area of the one hundred to three hundred block of Hamilton Street, NW and sold him more

than 50 grams of cocaine base. This sale was within 1000 feet of Cuno Rudolph Elementary

School.

On April 8, 2005, Mr. Battle again arranged with an undercover officer by telephone to

sell the undercover officer cocaine base. On that same day, Mr. Battle met the undercover officer

in the area of 7th and Madison Street and sold him more than 50 grams of cocaine base.

## GOVERNMENT DISMISSAL OF CERTAIN COUNTS OF THE INDICTMENT

It is the intent of the government to dismiss the three unlawful use of a

telephone counts (Counts One, Three, and Six of the Indictment) on the day of trial. The defense

does not object. The defendant is also willing to make a limited waiver as to the introduction of

this evidence based solely on the dismissal of the charges. More specifically, that waiver is as

follows: the defense warrants that it will not claim that, if admitted by the Court over any other

valid defense objections, this evidence is irrelevant or unduly prejudicial. The defense, however,

reserves its right (1) to move to suppress this evidence as having been unlawfully obtained (a

motion which, if appropriate, will be filed very shortly , without any late-filing objection by the

Government) and (2) to object on any other proper ground, aside from relevance and undue

prejudice. However, if any telephone conversations lawfully obtained are inaudible in whole or

in material part to the extent that accurate transcriptions of them cannot be produced, the defense

also reserves its right to object to the admission of such telephone calls as misleading and unduly

prejudicial under FRE 403.

## PROPOSED VOIR DIRE

### Introduction

Good morning, Ladies and gentlemen, I am Judge Ricardo M. Urbina, and I will be the

presiding judge in this case. You have been called to the courtroom for possible selection as

jurors in a criminal case entitled <u>United States v. Michael A. Battle.</u>  Mr. Battle is charged with an

offense which I will review with you in a moment.

Would you all please stand so that you can be sworn in by the Deputy Clerk, and then we

will proceed.

[<b>SWEARING IN</b>]

The procedure of jury selection is called the <u>voir</u> <u>dire</u> process, and the object is to select

twelve (12) jurors and two (2) alternates who have no prior knowledge concerning this case and

no bias toward either side in this case.  In short, it is our aim to select a jury that will reach a

verdict based solely upon the evidence presented in this courtroom and the law as I instruct you.

During this <u>voir</u> <u>dire</u> process, you will be introduced to all of the participants in the trial and I will

ask you a series of questions.

The words <u>voir</u> <u>dire</u> are a legal term which comes from the French and means to speak

truthfully, and the origin of <u>voir</u> <u>dire</u> helps explain its purpose.  It is the time at the beginning of a

trial when a jury is selected and when I will ask you some questions that the lawyers and I think

will be helpful to us in selecting a fair and impartial jury.  You, of course, are bound by the oath

you've just taken to speak truthfully in response to those questions.

Now, as I just said, the reason for asking the questions is to help the parties and the Court

select a jury that will be fair and impartial, that will make a decision based only on the evidence

presented in the courtroom, and that will follow my instructions and will be fair to both sides.

You should have a little card and a pencil, hopefully.  I would ask, if you haven't done so,

that on one side of the card you put your juror number.  As I go through each of these questions, if

your answer is yes or if you think you have some information to provide in response to the

question, just write down the number of the question.  So don't write all of them down, just write

down the ones for which you answer yes and have some information to provide to the court and counsel.

I will go through each question very carefully. If you want me to repeat it, please raise your hand. If you want me to go over it again because you didn't hear or understand it, please raise your hand.

Also as we go through this, if you remember information in response to an earlier question and you can't remember the number, there is sort of a catchall question at the end so you can just put that one down and then we can go back over what other information you have. The card is used just as a reminder for you of which questions you answered "yes" to when I went through them all.

We're going to be asking you, from your perspective, what may appear to be some personal questions to attempt to get your viewpoints about things, and it's important that you be very straightforward with us and tell us your views. Your responses will make it easier for us to be able to select a jury. So I would hope that you would not view this as being intrusive. It is something that's important for counsel and for the Court to consider in deciding who should be on the panel in terms of whether people are going to be able to be impartial. You will not have to discuss your answers in front of everyone in court; at the end of the process I will be calling each of you to the bench one by one, where we will discuss your answers individually.

**[HERE READ STATEMENT OF THE CASE]**

The government alleges that on March 11, 2005, Michael Battle arranged with an undercover officer by telephone to sell the undercover officer cocaine base. On that same day, Mr. Battle met the undercover officer in the area of 7th and Madison, NW, and sold him more than 50 grams of cocaine base.

On March 24, 2005, Mr. Battle again arranged with an undercover officer by telephone to sell the undercover officer cocaine base. On that same day, Mr. Battle met the undercover officer in the area of the one hundred to three hundred block of Hamilton Street NW and sold him more than 50 grams of cocaine base. This sale was within 1000 feet of Cuno Rudolph Elementary School.

On April 8, 2005, Mr. Battle again arranged with an undercover officer by telephone to sell the undercover officer cocaine base. On that same day, Mr. Battle met the undercover officer in the area of 7th and Madison Street and sold him more than 50 grams of cocaine base.

_____1.     Given the information that I just told you, do you think that you may know anything about the facts and circumstances of this case?

2.     As I said earlier, I am Judge Ricardo M. Urbina, and I will be the presiding judge in this case. Assisting me are Jim Dale, the Deputy Clerk; _____, the court reporter who keeps a record of the proceedings for me and the litigants; and one of my law clerks, _____. Do you know or think that you recognize any of us?

3.     The United States is represented in this case by Assistant United States Attorney Jeff Pearlman. Do you know or think that you recognize the prosecutor, Mr. Pearlman. The attorney representing Mr. Battle is Frances D'Antuono. Do you know or think that you recognize Ms. D'Antuono?

4.     Do you know or think that you recognize the defendant, Mr. Michael Anthony Battle?

5.     Do you know or think that you recognize any member of the panel, for example from work, school, socially, prior jury service, or around the neighborhood? Please take a look around to be sure.

6.      The government alleges that the events set forth in the indictment occurred in the areas of 7th and Madison Streets, N.W. in Washington, D.C. and in the 100-300 blocks of Hamilton Street, N.W. in Washington, D.C.  Do any of you live near, work near, or have anything other than a general familiarity with these locations?

7.      a)      The government may call some or all of the following persons as witnesses, who Mr. Pearlman will now identify.  Not all of these witnesses will necessarily testify.  Do you know or think that you recognize any of these proposed witnesses?

b)      The defense may call some or all of the following persons as witnesses, whom Ms. D'Antuono will now identify, although the defense is not required to call any witnesses.  Do you know or think that you recognize any of these proposed witnesses?

8.      In a criminal trial, the defendant does not need to testify, call any witnesses, or produce any evidence whatsoever to prove his innocence.  Would you have any difficulty at all in applying this principle of law?

9.      A fundamental principle of our legal system is that when a person is charged with a criminal offense, he is presumed to be innocent.  The presumption of innocence can only be overcome if the government proves the defendant's guilt beyond a reasonable doubt. Would you have any difficulty at all in applying this principle of law?

10.      Because Mr. Battle is presumed innocent, he need not testify, nor offer any evidence.  Would you view his and his attorney's decision not to put on evidence, as any evidence whatsoever of guilt?   If Mr. Battle decided not to testify, would any of you tend to view that decision as any evidence of guilt?

11.      To reach a verdict, every juror must agree on the verdict.  That is, any verdict must

be unanimous.  In deliberations you must consider the opinions and points of your fellow jurors. In the final analysis, however, you must follow your own conscience and be personally satisfied with any verdict.

a)  Would you have any difficulty at all in expressing your own opinions and thoughts about this case to your fellow jurors?

b)  Do you feel that you would tend to go along with the majority of jurors, even if you did not agree, just because you were in the minority?

12.    Do you have any beliefs regarding the trustworthiness of law enforcement agents or officers as a general matter, such that you would tend to give either more or less weight to, or tend to believe or disbelieve, the testimony of a law enforcement agent or officer simply because of his or her status as a law enforcement agent or officer?

13.    Have you ever served on a Grand Jury?

*[Follow-up at the bench:  Do you understand that the standard of proof for conviction at trial is beyond a reasonable doubt, which is a higher standard of proof required to indict, which is probable cause?  Would you have any difficulty at all in applying the correct standard as I define it for you at the close of this case?]*

14.    Have you ever served as a juror in a criminal case in a federal court, in District of Columbia Superior Court, or in a court located somewhere else?

*[Follow-up at the bench: What kind of cases, and was the jury able to reach a verdict in each case?  Was there anything about that experience -- whether it involved the lawyers, the judge, the defendant, the evidence, or your jury deliberations -- that makes you feel that you would have trouble being fair and impartial, or would otherwise make it difficult for you to serve*

*as a juror in this case?]*

15.    Have you (or any of your household members or close friends and relatives) ever worked, in any capacity, for any type of law enforcement agency?  This would include, among others, the Federal Bureau of Investigation, the Drug Enforcement Administration, the Metropolitan Police Department, the U.S. Marshal's Service, the Secret Service, the U.S. Park Police, the Postal Inspectors, the Military Police, the CIA, the IRS, Department of Homeland Security or other law enforcement agencies.  Please also answer "yes" to this question if you (or any of your household members or close friends and relatives) have ever applied for a job with any such organization, or are planning to in the near future.

*[Follow-up at the bench: What was the nature of the work?  Would that experience affect your ability to serve as a juror in this case, especially if issues were to arise concerning the credibility of police officers or law enforcement officers, or defense witnesses?  Would that experience affect your ability to be fair and impartial in this case?  Would it otherwise make it difficult for you to sit as a juror in this case?]*

16.    Have you (or any of your household members or close friends and relatives) ever worked, in any capacity, for a prosecutor's office?  That can include the Department of Justice, a United States Attorney's Office, the Office of Attorney General for the District of Columbia, (formerly the Office of the Corporation Counsel), or any state, county, commonwealth or district attorney's office.  Please also answer "yes" to this question if you (or any of your household members or close friends and relatives) have ever applied for a job with any such organization, or are planning to in the near future.

*[Follow-up at the bench: What was the nature of the work?  Would that experience*

*affect your ability to serve as a juror in this case, especially if issues were to arise concerning the credibility of police officers or law enforcement officers, or defense witnesses?  Would that experience affect your ability to be fair and impartial in this case?  Would it otherwise make it difficult for you to sit as a juror in this case?]*

17.    Have you (or any of your household members or close friends and relatives) ever worked, in any capacity, for a prison, jail, or department of corrections?  For or in the juvenile justice system?  Please *also* answer "yes" to this question if you (or any of your household members or close friends and relatives) have ever applied for a job with any such organization, or are planning to in the near future.

*[Follow-up at the bench:  What was the nature of the work?  Would that experience affect your ability to serve as a juror in this case, especially if issues were to arise concerning the credibility of police officers or law enforcement officers, or defense witnesses? Would that experience affect your ability to be fair and impartial in this case?  Would it otherwise make it difficult for you to sit as a juror in this case?]*

18.    Have you (or any of your household members or close friends and relatives) ever worked, in any capacity, for a criminal defense lawyer, the Federal Public Defender Service, the District of Columbia Public Defender Service, or similar organization, or been involved in any way in the defense of a criminal case?  Please also answer "yes" to this question if you (or any of your household members or close friends and relatives)  have ever applied for a job with any such individual or organization, or are planning to in the near future.

*[Follow-up at the bench: What was the nature of the work?  Would that experience affect your ability to serve as a juror in this case, especially if issues were to arise concerning the*

*credibility of police officers or law enforcement officers, or defense witnesses? Would that experience affect your ability to be fair and impartial in this case? Would it otherwise make it difficult for you to sit as a juror in this case?]*

19.     Have you (or any of your household members or close friends and relatives) ever studied law or had any legal training? This would include law school, paralegal training, or any post-graduate legal training.

20.     Have you (or any of your household members or close friends and relatives) ever worked at a courthouse or for a court system, in any capacity, including as a probation or parole officer? Please also answer "yes" to this question if you (or any of your household members or close friends and relatives) have ever applied for a job at any such organization, or are planning to in the near future.

*[Follow-up at the bench: What was the nature of the work? Would that experience affect your ability to serve as a juror in this case, especially if issues were to arise concerning the credibility of police officers or law enforcement officers, or defense witnesses? Would that experience affect your ability to be fair and impartial in this case? Would it otherwise make it difficult for you to sit as a juror in this case?]*

21.     Have you (or any of your household members or close friends and relatives) ever been a witness to, a victim of, accused of, arrested for, or convicted of, any crime? For purposes of this question, do not include minor traffic violations.

22.     Have you ever belonged to or participated in any crime prevention groups, such as neighborhood watch organizations, "orange hat" groups, or any other crime prevention groups?

23.     Have you (or any of your household members or close friends and relatives) ever

had an experience with law enforcement, prosecutors, police officers, or the court or court system,

including traffic violations, that would make it difficult for you to be a fair and impartial juror in

this case?

24.    Do you, because of the reported crime situation in Washington, DC, or because of

the reported incarceration rate in Washington, DC, think that your own concerns or feelings would

make it difficult to consider the evidence surrounding a criminal charge or to reach a verdict in a

criminal case?

25.    The alleged offenses in this case involve the alleged unlawful distribution of

illegal drugs.  Do you feel that, because of the nature of the charges in this case, it might be

difficult for you to sit as a juror?

26.    Do you have an opinion or feeling about the possession or use of drugs, or the

narcotics laws in general, that would make it difficult to render a fair and impartial verdict based

solely upon the evidence presented during the trial, such as a belief that drug possession should be

legalized, or that too much money is spent on prosecuting drug offenses?

27.    This trial is expected to last approximately three days; the length of deliberations is

determined by the jury itself.  Do you have an urgent or extremely important matter to attend to

this week or next week, such that you could be faced with a hardship if selected for the jury in this

case?

28.    Do you have any moral, religious, or philosophical beliefs that would make it

difficult for you to render a judgment in this case based solely upon the evidence presented during

the trial?

29.    The law requires that jurors weigh the evidence in a case and reach a verdict based

11

solely upon the admitted evidence and instructions of law, without any regard whatsoever for what the potential punishment might or might not be. Would you have any difficulty at all in following this principle?

30. Anyone who is selected to serve on this jury will take an oath to follow the law as instructed by this Court. Would you for any reason not be able to accept and follow my instructions regarding the law?

31. During the presentation of evidence in this case you may be asked to view and listen to videotapes and/or audiotapes and to make determinations about them in your deliberations. Do any of you have any vision or hearing problems, or are you sitting next to someone whom you believe may have a hearing problem or trouble understanding the English language? Do any of you suffer from any illness that would make it difficult for you to sit as a juror? Are any of you presently taking any medication that causes drowsiness, confusion or discomfort?

32. Is there any reason or issue, not already raised, that might interfere with your ability to treat both sides fairly and arrive at a fair and impartial verdict, or that causes you to feel you should not sit as a juror in this case?

33. Finally, do any of you know of any other reason why you cannot sit as a juror in this case and be fair to both sides, and render a fair and impartial verdict based upon the evidence and the law as you shall hear it?

That concludes the questions. If anyone did not hear a question completely, or needs to have it explained or repeated, please raise your hand.

12

<u>Final Remarks</u>

We know roughly how many jurors we need to talk to in order to have the 12 jurors plus the alternates, including strikes from counsel. And so what I will do is talk to as many people as I need to in order to make sure that I have a sufficient number of jurors. So it may be that we will not need to talk to everybody. I'll be bringing you up one by one. If I don't need to talk to you -- in other words, if I have a sufficient pool to make a selection of the jury, then we will stop at that point, shorten this process and get through it as quickly as we can.

Now what we're going to do is bring you up to the bench here one by one with your card. We will go over the information that you've listed, and have a discussion with you about it.

What I would ask is that if you need to use facilities, you can go outside, they can direct you to them. But please come back promptly. Don't wait around out in the hall. Certainly don't leave the courthouse. What happens is sometimes people stand outside the courtroom and start talking among themselves and it means that the deputy courtroom clerk has to go out and find you. So it's important that if you go out, use the facilities, please come back into the courtroom promptly.

Now, I would ask that you not speculate about the case. I would ask that if you have information that you're going to be providing me, please don't discuss it with your fellow jurors so that you don't create problems for them by telling them something that may excuse you and then may wind up having to excuse them.

You can talk among yourselves, get to know your fellow jurors. This is a nice opportunity to do that. It's a nice cross-section of our community to be able to talk together, get to know your neighbors. There is no problem with that.

13

What I also ask is that if you do get up, that you look at whoever is on either side of you and where you are -- we put you in order according to the list so we know who you are -- and I ask that you go back to the same seat. Just make sure that you go back to the same place so we keep you in the order that we have you on the list and don't take you out of order.

Now, whether you go outside the courtroom to use facilities or if we wind up taking a lunch break, if you run into any of the witnesses that were introduced to you, I'd ask that you not stop and talk to them about anything. If you're seen talking to them I need to make an inquiry to make sure you are not talking about the case. You are not allowed to talk about the case. You're not allowed to ask them any questions about the case at all.

That goes for the attorneys as well. If you see them out in the hall, cafeteria, wherever, please don't talk to them. Again, if you're seen talking to them, even if you're not talking about the case, I still need to make an inquiry. It takes a lot of extra time. It will prolong this whole process. If you are talking about the case, then it definitely creates a problem and I'm instructing you that you are <u>not</u> to discuss the case.

We want you to come here without getting additional information from somebody else. That way, if you're chosen as a juror you'll be making your decision based on the evidence that's going to be presented to you in the courtroom.

## <u>DEFENDANT'S OBJECTIONS TO PROPOSED VOIR DIRE</u>

None. This voir dire was jointly developed and agreed upon.

## <u>PROPOSED PRELIMINARY JURY INSTRUCTIONS</u>

All citations are to the Red Book Criminal Jury Instructions (4th Ed). unless otherwise noted.

14

**1.03**         **Preliminary Instructions Before Trial**

Before we begin the trial, I want to explain some of the legal rules that will be important in this trial. I want to emphasize that these remarks are not meant to be a substitute for the detailed instructions that I will give at the end of the trial just before you start your deliberations. These preliminary instructions are intended to give you a sense of what will be going on in the courtroom and what your responsibilities as jurors will be.

**1.02**         **Note Taking by Jurors (if applicable)**

When you took your seats, you probably noticed that each of you had a notebook and pencil waiting for you. It is my practice to allow jurors to take notes during the trial if they want to, and to have their notes with them during the jury's deliberations. Be mindful that trial transcripts will not be available during deliberations.  I want to emphasize that none of you are required to take notes. Indeed, you should not do so if you think that note taking will distract your attention from the evidence or the testimony of the witnesses. On the other hand, if you think that taking notes might help you remember the testimony of the witnesses and the other evidence in the case, or might make you pay more attention during the trial, you are free to take notes. You should remember that your notes are only an aid to help your memory. They are not evidence in the case, and they should not replace your own memory of the evidence. Those jurors who do not take notes should rely on their own memory of the evidence and should not be influenced by another juror's notes.

Whenever there is a recess in the trial, you should leave your notebooks and pencils on your seats.  They will be collected by the clerk and given to me to keep.   No one, including

myself, will ever look at any of your notes. At the end of the trial, when you come back to the courtroom to deliver your verdict, your notes will be destroyed. Again, neither I nor anyone else will look at any notes you have taken.

### 1.21        Preliminary Instruction to Jury Where Identity of Alternates is not Disclosed

You have probably noticed that there are fourteen (14) of you sitting in the jury box. Only twelve (12) of you will retire to deliberate in this matter. In some courtrooms, jurors in seats 13 and 14 are automatically the alternates, but that is not how it works in this courtroom. Instead, we randomly select the alternates' seats at the beginning of each trial from among all the jury seats so that any two seats -- 1 and 8, 10 and 5, 2 and 13, or any other combination -- might turn out to be the seats of the alternates.

I will not disclose who the alternate jurors are until the end of my final instructions just before you begin your deliberations. Therefore, it is important that all of you think of yourselves as regular jurors during this trial, and that all of you give this case your fullest and most serious attention.

At the beginning of the jury selection process, you were introduced to some witnesses in person. Others were identified to you only by name. If, at any time during this trial, you suddenly realize that you recognize or might know any witness, lawyer, someone referred to in the testimony or evidence, or anyone else connected with this case in any way, you should tell the court immediately. You should not tell any other member of the jury about your discovery. If you realize you are acquainted with someone connected with this case while a witness is testifying, you should raise your hand immediately and ask to speak privately to the marshal or with me at

the bench.

Now let me explain briefly some of the procedures we will follow and some of the rules of law that will be important in this case. This is a criminal case which began when the grand jury returned an indictment. An Assistant United States Attorney will present the evidence in support of the charges in the indictment.

### 1.22    Juror's Recognition of a Witness or Other Party Connected to the Case

At the beginning of the jury selection process, potential witnesses were identified to you by name.  If, at any time during this trial, you suddenly realize that you recognize or might know any witness, lawyer, someone referred to in the testimony or evidence, or anyone else connected with this case in any way, you should tell the court immediately.  You should not tell any other member of the jury about your discovery.  If you realize you are acquainted with someone connected with this case while a witness is testifying, you should raise your hand immediately and ask to speak privately to the marshal or with me at the bench.

### READ OR SUMMARIZE THE INDICTMENT

You should understand clearly that the indictment that I just read or summarized is not evidence.  The indictment is just a formal way of charging a person with a crime in order to bring him to trial.  You must not think of the indictment as any evidence of the guilt of the defendant, or draw any conclusion about the guilt of the defendant just because he has been indicted.

At the end of the trial, you will have to decide whether or not the evidence presented has convinced you beyond a reasonable doubt that the defendant committed the offenses with which he has been charged.  The defendant has been charged with the following offenses:

17

Unlawful Distribution of 50 grams or More of Cocaine Base on March 11, 2005;

Unlawful Distribution of 50 grams or More of Cocaine Base on March 24, 2005;

Unlawful Distribution of 50 grams or More of Cocaine Base within 1000 feet of a school on

March 24, 2005, and

 Unlawful Distribution of 50 grams or More of Cocaine Base on April 8, 2005.


### 4.30(C)        Distribution of  50 Grams or More of Cocaine Base

In this indictment, the defendant is charged with three counts of distribution of 50 grams

or more of cocaine base, also known as crack cocaine. The essential elements of these offenses,

each of which the government must prove beyond a reasonable doubt, are:

1. That the defendant distributed a controlled substance.  "Distribute" means to transfer or

attempt to transfer to another person.  The government need not prove that the defendant received

or expected to receive anything of value in return.

2. That the defendant possessed the controlled substance knowingly and intentionally.

This means consciously, voluntarily and on purpose, not mistakenly, accidentally or inadvertently.

3.  That the defendant distributed the controlled substance knowingly and intentionally.

This means consciously, voluntarily and on purpose, not mistakenly, accidentally or inadvertently.

4. That the amount of the crack cocaine was at least 50 grams.

The law makes crack cocaine a controlled substance.  You must decide whether the

material was crack cocaine.  In doing that, you may consider all evidence that may help you,

including exhibits, expert and non-expert testimony.

The government is not required to prove that the defendant knew the precise type of

controlled substance that he distributed. The government must prove beyond a reasonable doubt, however, that the defendant knew that he possessed some type of controlled substance.

With respect to the Count of the indictment alleging distribution of 50 grams or more of cocaine base within 1000 feet of an elementary school, the essential elements of that charge are as follows:

1. That the distribution involved 50 grams or more of a substance or mixture of crack cocaine;

2. That the defendant distributed the controlled substance within 1000 feet of the real property of an elementary school. The Government is not required to prove that the defendant actually knew that he or she was within 1000 feet of a school when the offense was committed. The Government must only prove that the defendant was in fact within 1000 feet of the school when he or she committed the offense.

### 1.07        Question Not Evidence

During the course of the trial, the lawyers will ask the witnesses questions. Sometimes a lawyer's question suggests that something is a fact. Whether or not something is a fact depends on the witness' answer -- not the lawyer's question. A lawyer's question is not evidence.

At the end of all of the evidence, each side will have an opportunity to make a closing argument in support of its case. The lawyers' closing arguments, just like their opening statements, are not evidence in this case. They are only intended to help you understand the evidence.

Finally, at the end of the evidence and after both sides have finished closing arguments, I will tell you in detail about the rules of law that you must follow when you consider what your

verdict shall be. Your verdict must be unanimous; that is, all twelve jurors must agree on the verdict.

At the end of all the evidence, I will instruct you once more on the rules of law that you are to apply in your deliberations when you retire to consider your verdict in this case. Then each party will have a chance to present oral arguments in support of its case. The statements of the lawyers in their closing arguments, just as in their questions and in their opening statements, are not evidence in this case. They are intended only to help you understand the evidence and what each party claims the evidence shows. Finally, at the end of the closing arguments, I will have a few additional instructions for you before you begin your deliberations.

I want to briefly describe my responsibilities as the judge and your responsibilities as the jury. My responsibility is to conduct this trial in an orderly, fair and efficient manner, to rule on legal questions that come up in the course of the trial, and to instruct you about the law which applies to this case. It is your sworn duty as jurors to accept and apply the law as I state it to you. Your responsibility as jurors is to determine the facts in the case. You -- and only you -- are the judges of the facts. You alone determine the weight, the effect, and the value of the evidence, as well as the credibility or believability of the witnesses. You must consider and weigh the testimony of all witnesses who appear before you. You alone must decide whether to believe any witness, and to what extent to believe any witness.

And remember, you must pay very careful attention to the testimony of all of the witnesses because you will not have any transcripts or summaries of the testimony available to you during your deliberations. You will have to rely entirely on your memory [and your notes if you choose to take any.]

During this trial, I may rule on motions and objections by the lawyers, make comments to lawyers, question the witnesses, and instruct you on the law. You should not take any of my statements or actions as any indication of my opinion about how you should decide the facts. If you think that somehow I have expressed or even hinted at any opinion as to the facts in this case, you should disregard it. The verdict in this case is your sole and exclusive responsibility.

You may consider only the evidence properly admitted in this case. That evidence includes the sworn testimony of witnesses and exhibits. If the evidence includes anything other than testimony and exhibits, I will instruct you about these other types of evidence when they are admitted during the trial.

During the trial, if the court or a lawyer makes a statement or asks a question that refers to evidence that you remember differently, you should rely on your memory of the evidence during your deliberations.

The lawyers in the case may object when the other side asks a question, makes an argument, or offers evidence which that lawyer believes is not properly admissible. You must not be prejudiced against the lawyer who makes the objection or the party he or she represents. Indeed, it is the lawyer's responsibility to object to evidence that he or she believes is not properly admissible.

If I sustain an objection to a question asked by a lawyer, you should forget the question because the question is not evidence. You must not guess or speculate what the answer to the question would have been. If a question is asked and answered, and I then rule that the answer should be stricken from the record, you must forget that both the question and the answer that were stricken. You should follow this same rule if any of the exhibits are stricken.

You must not be influenced by the nature of the charge in arriving at your verdict. Your responsibility is to decide this case solely on the evidence presented in the courtroom. As a result, you must not conduct any independent investigation of your own of the case -- like going to visit the scene.

In addition, you should disregard any statements made about the case by anyone outside the courtroom. You must not talk about the case with the lawyers, the defendant, witnesses, or anyone else connected with the case. If you see someone involved in this case outside the courtroom, other than a fellow juror, you should not speak with that person about anything. If, at any time during the trial, anyone tries to discuss the case with you or if you hear anyone talking about the case, you should refuse to participate in or listen to the discussion. If you speak with someone involved in the case outside the courtroom while the trial is still going on, we may have to stop the trial, pick a new jury and start all over again. You must also completely disregard any press coverage, including newspaper, television, or radio reports that you may read, see, or hear. If you are exposed to any news reports inadvertently, you should immediately disregard them and direct your attention elsewhere.

If you have heard any statements about the case, if anyone has tried to discuss the case with you or if you have been exposed to press coverage about the case, you must tell me about it immediately by informing the marshal or the courtroom clerk. You should not tell any of your fellow jurors or anyone else. You should tell only me, the marshal, or the clerk.

You must not discuss this case with anyone until this case is submitted to you for your decision at the end of my final instructions. Until the case is submitted to you, you must not talk

22

about it with your fellow jurors. You must not talk about the case to your friends or relatives, or even your husband or wife, until it is over and you have completed your deliberations.

After I submit the case to you, you may discuss it only when I instruct you to do so, and only in the jury room and only in the presence of all your fellow jurors. It is important that you keep an open mind and not decide any issue in the case until after I submit the entire case to you with my final instructions.

**1.05          Cautionary Instruction Prior to First Recess**

We are about to take our first break during the trial and it is important that you follow certain instructions whenever the court is in recess.

First, until I submit this case to you at the end of my final instructions, you must not discuss it with anyone -- not with the parties, witnesses, attorneys, or anyone else connected with the case. You must not even discuss it with your fellow jurors, friends or family members. To be fair to both the government and the defendant, you should keep an open mind throughout the trial. You should reach your conclusion only during the final deliberations after all the evidence is in and you have heard the attorneys' closing arguments and my instructions to you on the law.

Second, do not permit any other person to discuss the case in your presence. This applies to anyone, including members of your family, friends or relatives, courtroom spectators, witnesses, reporters, and parties to this case. If anyone attempts to discuss the case with you, tell them not to talk to you. If anyone attempts to discuss the case with you or you overhear any discussion of the case, you must report that fact to me as soon as you can. However, you should not discuss with any of your fellow jurors the fact that someone tried to discuss the case with you

or that you overheard a discussion, nor should you discuss with them any other fact that you feel necessary to bring to the court's attention. If you need to advise me of such matters, please do so through the marshal or clerk.

Finally, although it is a natural human tendency to talk with people with whom you may be thrown into contact, you must not talk to any of the parties or their attorneys or any witness in this case during the time you serve on this jury. If you encounter anyone connected with the case outside the courtroom, you should avoid having a conversation with them, overhearing their conversation, or having any contact with them at all. For example, if you inadvertently find yourself in a courthouse corridor, elevator, the cafeteria, or any other location where the case is being discussed by attorneys, parties, witnesses, or anyone else, you should immediately leave the area to avoid hearing such discussions. If you do overhear a discussion about the case, you should report that to me as soon as you can. Finally, if you see an attorney or witness involved in the case and they turn and walk away from you, they are not being rude. They are merely trying to avoid any contact with you as I have instructed them.

### 1.04         Definitions

#### A. Stipulation of Fact

The government and the defendants may stipulate -- that is, agree -- to certain facts. Any stipulation of fact is undisputed evidence, and you may consider it proven.

#### B. Stipulation of Testimony

The government and th defendants may stipulate -- that is, agree -- to what testimony a particular witness would have given if he or she had testified in this case. You may consider stipulated testimony as exactly what this witness would have said had he or she testified.

**1.08**         **Expert Testimony**

Ordinarily, the rules of evidence do not permit witnesses to testify as to opinions or conclusions. But there is an exception to this rule for expert witnesses.  Experts are allowed to give opinions or conclusions because they have become expert in some art, science, profession or calling.  They may give their opinions or conclusions, and reasons for their opinions.  In this case, the court has permitted several witnesses to testify as an experts concerning the chemistry of drug and narcotics analysis and narcotics experts.  You are not bound by an expert's opinion.  If you find that the opinion is not based on sufficient education or experience, that the reasons supporting the opinion are not sound, or that the opinion is outweighed by other evidence, you may completely or partially disregard the opinion. In other words, give the opinion the weight you think it deserves after you consider it along with all the other evidence.

**FINAL JURY INSTRUCTIONS**

Ladies and gentlemen of the jury, you are about to hear the closing arguments of counsel concerning the evidence in this case.  At this time, it is my duty and responsibility as the trial judge to give you instructions as to the law that applies to this case and to the evidence that has been presented.  It is your sworn duty to base your verdicts upon the law given in these instructions and upon the evidence that has been admitted in this trial.

**2.01**         **Instructions**

In the first part of my instructions, I will talk about how you should review the evidence in this case.  In the second part, I will tell you what the law is with respect to the specific offenses charged in the indictment.  It is your duty to accept the law as I state it to you.  You should consider all the instructions as a whole.  You may not ignore any instruction, or question the

25

wisdom of any rule of law.

**2.02          Function of the Jury**

Your function, as the jury, is to determine whether the government has proven the charged offenses beyond a reasonable doubt from the facts you find. You are the sole judges of the facts. You alone decide what weight to give the evidence presented during the trial. You decide the value of the evidence and the believability of the witnesses.

You should determine the facts without prejudice, fear, sympathy or favoritism. You should not be improperly influenced by anyone's race, nationality, ethnic origin or gender. Decide the case solely from a fair consideration of the evidence.

You must not take anything I may have said or done as indicating how I think you should decide this case. If you believe that I have expressed or indicated any opinion as to the facts, you should ignore it. It is your sole and exclusive duty to decide the verdict in this case.

**2.03          Jury's Recollection Controls**

If any reference by the court or the attorneys to evidence does not coincide with your own recollection of the evidence, it is your recollection which should control during your deliberations.

**1.02          Note Taking By Jurors**

During the trial, I have permitted those jurors who wanted to do so to take notes. You may take your notes with you to the jury room and use them during your deliberations if you wish. As I told you at the beginning of the trial, your notes are only to be an aid to your memory and they should not replace your memory. Those jurors who have not taken notes should rely on their own memory of the evidence and should not be influenced by another juror's notes if the notes do not coincide with your memory. The notes are intended to be for the notetaker's own personal use.

At the end of your deliberations, please tear out from your notebooks any notes you have

made and give them to your foreperson. The clerk will collect your notebooks and pencils when you return to the courtroom, and I will ask the foreperson to give the clerk your notes after your verdict is announced. The clerk will give the notes to me and I will destroy your notes immediately after the trial. No one, including myself, will look at them.

### 2.04    Evidence in the Case

During your deliberations, you may consider only the evidence properly admitted in this trial. The evidence in this case was the sworn testimony of the witnesses and the exhibits which were admitted into evidence, regardless of who may have produced them. Any stipulation of fact is undisputed evidence, and you may consider it undisputed evidence.

When you consider the evidence, you are permitted to draw, from facts which you find have been proven, such reasonable inferences as you feel are justified in the light of your experience.

### 2.05    Statements of Counsel

The statements and arguments of the lawyers are not evidence. They are only intended to assist you in understanding the evidence.

### 1.07    Questions Not Evidence

Sometimes a lawyer's question suggests that something is a fact. Whether or not something is a fact depends on the witness's answer, not the lawyer's question. A lawyer's question is not evidence.

### 2.06    Indictment Not Evidence

The indictment is merely the formal way of accusing a person of a crime in order to bring him to trial. You must not consider the indictment as evidence of any kind. You may not

consider it as any evidence of the defendant's guilt or draw any inference of guilt from it.

**2.07        Inadmissible and Stricken Evidence**

The lawyers in this case sometimes objected when the other side asked a question, made an argument, or offered evidence which the objecting lawyer believed was not proper. You must not be prejudiced against the lawyer who made the objections. It is the lawyers' responsibility to object to evidence which they believe is not admissible.

If, during the course of the trial, I sustained an objection to a lawyer's question, you should disregard the question and you must not speculate as to what the answer would have been.

If, after a witness answered a lawyer's question, I ruled that the answer should be stricken, you should disregard both the question and the answer in your deliberations.


**2.08        Burden of Proof, Presumption of Innocence**

A defendant in a criminal case is presumed to be innocent. This presumption of innocence remains with the defendant throughout the trial unless and until he is proven guilty beyond a reasonable doubt.

The burden is on the government to prove a defendant guilty beyond a reasonable doubt. This burden of proof never shifts throughout the trial. The law does not require a defendant to prove his innocence or to produce any evidence. If you find that the government has proven beyond a reasonable doubt every element of the offense with which the defendant is charged, it is your duty to find him guilty. On the other hand, if you find the government has failed to prove

any element of the offense beyond a reasonable doubt, you must find the defendant not guilty.

**2.09        Reasonable Doubt**

_____The government has the burden of proving the defendant guilty beyond a reasonable doubt.  In civil cases, it is only necessary to prove that a fact is more likely true than not, or, in some cases, that its truth is highly probable.  In criminal cases such as this one, the government's proof must be more powerful than that.  It must be beyond a reasonable doubt.  Reasonable doubt, as the name implies, is a doubt based on reason – a doubt for which you have a reason based upon the evidence or lack of evidence in the case.  If, after careful, honest, and impartial consideration of all the evidence, you cannot say that you are firmly convinced of the defendant's guilt, then you have a reasonable doubt.

Reasonable doubt is the kind of doubt that would cause a reasonable person, after careful and thoughtful reflection, to hesitate to act in the graver or more important matters in life.  However, it is not an imaginary doubt, nor a doubt based on speculation or guesswork; it is a doubt based on reason.  The government is not required to prove guilt beyond all doubt, or to a mathematical or scientific certainty.  Its burden is to prove guilt beyond a reasonable doubt.

**2.10        Direct and Circumstantial Evidence**

There are two types of evidence from which you may find the truth as to the facts of a case -- direct evidence and circumstantial evidence.  When a witness, such as an eyewitness, asserts actual knowledge of a fact, that witness's testimony is direct evidence.  A chain of facts and circumstances indicating the guilt or innocence of a defendant is circumstantial evidence.  The law makes no distinction between the weight you should give to either kind of evidence, nor does circumstantial evidence require a greater degree of certainty than direct evidence does.  In

29

reaching a verdict in this case, you should weigh all of the evidence presented, both direct and circumstantial.

**2.13    Number of Witnesses**

The weight of the evidence is not necessarily determined by the number of witnesses testifying for each side.  Rather, you should consider all the facts and circumstances in evidence to determine which of the witnesses you believe.  A jury may find that the testimony of a smaller number of witnesses on one side is more believable than the testimony of a greater number of witnesses on the other side.

**2.14    Nature of the Charges Not To Be Considered**

One of the questions you were asked when we were selecting this jury was whether the nature of the charges would affect your ability to render a fair and impartial verdict.  There was a reason for that question.  You must not allow the nature of the charges themselves to affect your verdict.  You must consider only the evidence that has been presented in this case in rendering a fair and impartial verdict.

**2.11    Credibility of Witnesses**

In determining whether the government has established the charges against the defendant beyond a reasonable doubt, you must consider and weigh the testimony of all the witnesses who have appeared before you.

You are the sole judges of the credibility of the witnesses.  In other words, you alone are to determine whether to believe any witness and the extent to which any witness should be believed.

In reaching a conclusion as to the credibility of any witness, you may consider any matter that may have a bearing on the subject.  You may consider the demeanor and the behavior of the

30

witness on the witness stand; the witness's manner of testifying; whether the witness impresses you as a truthful person; whether the witness impresses you as having an accurate memory and recollection; whether the witness has any motive for not telling the truth; whether the witness had a full opportunity to observe the matters about which he or she has testified; whether the witness has any interest in the outcome of this case, or friendship or hostility toward other people concerned with this case.

Inconsistencies or discrepancies in the testimony of a witness, or between the testimony of different witnesses, may or may not cause you to discredit such testimony. Two or more persons witnessing an incident or transaction may see or hear it differently; an innocent misrecollection, like a failure of recollection, is not an uncommon experience. In weighing the effect of the inconsistency or discrepancy, always consider whether it pertains to a matter of important or unimportant detail, and whether the inconsistency or discrepancy results from innocent error or intentional falsehood.

You may consider the reasonableness or unreasonableness, the probability or improbability, of the testimony of a witness in determining whether to accept it as true and accurate. You may consider whether the witness has been contradicted or corroborated by other credible evidence.

If you believe that any witness has shown himself or herself to be biased or prejudiced, for or against either side in this trial, you may consider and determine whether such bias or prejudice has colored the testimony of the witness so as to affect the desire and capability of that witness to tell the truth.

You should give the testimony of each witness such weight as in your judgment it is fairly

entitled to receive.

**Witnesses Who Conferred With Counsel**

You have heard testimony about witnesses conferring with counsel in advance of the witnesses' testimony. You are instructed that it is lawful and proper -- and, indeed, to be expected -- that the attorney who proposes to call a witness will confer with the witness before trial. The purpose of such a conference is to enable counsel to ascertain what the witness knows of his or her own personal knowledge and the extent to which the witness's testimony will be admissible in evidence. The purpose is also to alert the witness as to what the witness will be asked to enable him or her to focus his or her recollections.

**1.10 - 1.11   Evaluation of Prior Consistent and Inconsistent Statements**

The testimony of witnesses may be discredited or impeached by showing that they have previously made statements which are inconsistent with their present courtroom testimony. It is for you to decide whether a witness made a statement on an earlier occasion and whether it was in fact inconsistent with the witness's in-court testimony here. If a witness at trial has been confronted with a prior statement which that witness made, and that prior statement is inconsistent with his or her testimony here in court, then you may consider the prior statement when you assess the truthfulness of the testimony the witness gave in court. You may not consider the earlier statement as proof that what was said in the earlier statement was true, unless the statement was made under oath, subject to penalty of perjury. If the earlier statement was made under oath, subject to penalty of perjury, you may consider this earlier statement also as proof that what was said in the earlier statement was true. If you believe that any witness has been discredited or impeached, then you should give his or her testimony the weight, if any, that you judge it is fairly

entitled to receive.

The testimony of a witness may be rehabilitated or supported by showing that the witness has previously made statements that are consistent with his present testimony. The prior statements are admitted into evidence both for your consideration in evaluating the credibility of the witness and as evidence in this case. If you find the prior statements to be consistent, you may consider such statements both in evaluating the credence to be given the witness's present testimony in court and as evidence in this case.

**2.26        Law Enforcement Officer's Testimony**

A law enforcement officer's testimony should be considered by you just as any other evidence in the case. In evaluating the officer's credibility, you should use the same guidelines which you apply to the testimony of any ordinary witness. In no event should you give either greater or lesser weight to the testimony of any witness merely because he or she is a law enforcement officer.

**1.08        Expert Testimony**

Ordinarily, the rules of evidence do not permit witnesses to testify as to opinions or conclusions. But there is an exception to this rule for expert witnesses. Experts are allowed to give opinions or conclusions because they have become expert in some art, science, profession or calling. They may give their opinions or conclusions, and reasons for their opinions.

In this case, the court has permitted various witnesses to testify as experts concerning drug chemistries, Anthony Washington to testify an expert based upon his knowledge and experience of certain patterns and methods of packaging and distributing crack cocaine, and Kenneth Scott to testify as a fingerprint expert. If you find that an opinion is not based on sufficient education or

experience, that the reasons supporting the opinion are not sound, or that the opinion is outweighed by other evidence, you may completely or partially disregard the opinion. In other words, give the opinion the weight you think it deserves after you consider it along with all the other evidence.

### 1.12    Impeachment By Proof of Conviction of a Crime – Witness

The testimony of a witness may be discredited or impeached by showing that he or she has been convicted of a crime. A witness's prior criminal conviction is admitted into evidence solely for your consideration in evaluating his or her credibility as a witness. You may consider the prior conviction only in evaluating the credibility of that witness's testimony in this case.

### New 2.27    Defendant's Exercise of Right to Remain Silent

Every defendant in a criminal case has an absolute right not to testify. The defendant, Michael Anthony Battle, has chosen to exercise his right to remain silent. You must not hold this decision against him, and it would be improper for you to speculate as to the reason or reasons for his decision, and I, therefore, instruct you not to do so. Most importantly, you must not draw any inference of guilt from the defendant's decision not to testify.

### 2.28    Defendant as Witness

The defendant has a right to become a witness in his own behalf. His testimony should not be disbelieved merely because he is the defendant. In weighing his testimony, however, you may consider the fact that the defendant has a vital interest in the outcome of this trial. As with the testimony of any other witness, you should give the defendant's testimony such weight as in your judgment it is fairly entitled to receive.

I will now instruct you regarding the particular elements of the crimes charged in the indictment.    In this indictment, the defendant is charged with three counts of distribution of 50 grams or more of cocaine base, also known as crack cocaine. The essential elements of these offenses, each of which the government must prove beyond a reasonable doubt, are:

1. That the defendant distributed a controlled substance.  "Distribute" means to transfer or attempt to transfer to another person.  The government need not prove that the defendant received or expected to receive anything of value in return.

2. That the defendant possessed the controlled substance knowingly and intentionally. This means consciously, voluntarily and on purpose, not mistakenly, accidentally or inadvertently.

3.  That the defendant distributed the controlled substance knowingly and intentionally. This means consciously, voluntarily and on purpose, not mistakenly, accidentally or inadvertently.

4. That the amount of the crack cocaine was at least 50 grams.

The law makes crack cocaine a controlled substance.  You must decide whether the material was crack cocaine.  In doing that, you may consider all evidence that may help you, including exhibits, expert and non-expert testimony.

The government is not required to prove that the defendant knew the precise type of controlled substance that he distributed.  The government must prove beyond a reasonable doubt, however, that the defendant knew that he possessed some type of controlled substance.

With respect to the Count of the indictment alleging distribution of 50 grams or more of cocaine base within 1000 feet of an elementary school, the essential elements of that charge are as follows:

1.  That the distribution involved 50 grams or more of a substance or mixture of crack

cocaine;

    2.    That the defendant distributed the controlled substance within 1000 feet of the real property of an elementary school.  The Government is not required to prove that the defendant actually knew that he or she was within 1000 feet of a school when the offense was committed. The Government must only prove that the defendant was in fact within 1000 feet of the school when he or she committed the offense.

### 37.13 DB    "Knowingly" Defined

I remind you that a person acts "knowingly," as the term is used in these instructions, if that person acts consciously and with awareness and comprehension and not because of ignorance, mistake, or misunderstanding or other similar reason.

### 3.02        Proof of State of Mind

Someone's intent or knowledge ordinarily cannot be proved directly, because there is no way of directly looking into the workings of the human mind.  But you may infer a defendant's intent or knowledge from the surrounding circumstances.  You may consider any statement made or acts done or omitted by a defendant, and all other facts and circumstances received in evidence which indicate a defendant's intent or knowledge.

You may infer, but are not required to infer, that a person intends the natural and probable consequences of acts knowingly done or knowingly omitted.  It is entirely up to you, however, to decide what facts to find from the evidence received during this trial.  You should consider all the circumstances in evidence that you think are relevant in determining whether the government has proved beyond a reasonable doubt that the defendant acted with the necessary state of mind.

### 3.07        "On or About" – Proof Of

You will note that the indictment charges that the offense was committed "on or about" a certain date or dates. The proof need not establish with certainty the exact dates of the alleged offenses. It is sufficient if the evidence in the case establishes beyond a reasonable doubt that the offenses were committed on dates reasonably near the dates alleged.

### CLOSING REMARKS

### 2.71        Election of Foreperson

When you return to the jury room, you should first select one of your members to be the foreperson. The foreperson should preside over your deliberations and will be your spokesperson here in court. There are no specific rules regarding how you select a foreperson. That is up to you. However, as you go about the task, be mindful of your mission: to reach a fair and just verdict based on the evidence. Consider whether you wish to select a foreperson who will be able to facilitate your discussions, who can help you organize the evidence, who will encourage civility and mutual respect among all of you, who will invite each juror to speak up regarding his or her views about the evidence, and who will promote a full and fair consideration of that evidence.

### 2.72        Unanimity

The verdicts must represent the considered judgment of each juror. In order to return verdicts, each juror must agree to the verdicts. Your verdicts must be unanimous.

### 2.75        Communications Between the Court and Jury During Jury's Deliberations

If it becomes necessary during your deliberations to communicate with me, you may send a note by the clerk or marshal, signed by your foreperson or by one or more members of the jury. No member of the jury should try to communicate with me by any means other than a signed note

and I will never communicate with any member of the jury on any matter touching the merits of this case, except in writing or orally here in open court.

Bear in mind also that you are never, under any circumstances, to reveal to any person -- not the clerk, the marshal or me -- how the jury stands on the question of the defendant's guilt or innocence until after you have reached a unanimous verdict. This means, for example, that you never should state to the court that the jury is divided 6 to 6, 7 to 5, 11 to 1, or in any other fashion, whether for conviction or acquittal.

### 2.76       Furnishing the Jury With a Copy of the Instructions

I will provide you with a copy of my instructions. During your deliberations, you may, if you want to, refer to these instructions. While you may refer to any particular portion of the instructions, you are to consider the instructions as a whole and you may not follow some and ignore others. The fact that you have been provided a copy of my instructions should not discourage you from making an inquiry regarding the meaning of these instructions if necessary. Please return the instructions to me when your verdict is rendered.

### 2.73       Exhibits During Deliberations

I am not sending the exhibits that have been admitted into evidence with you as you start your deliberations. However, you are entitled to see any or all of these exhibits as you deliberate. I suggest that you begin your deliberations and then, if it would be helpful to you, you may ask for any or all of the exhibits which have been admitted into evidence simply by sending me a note from your foreperson through one of the marshals.

**2.74        Possible Punishment Not Relevant**

The question of possible punishment of the defendant in the event of conviction is no concern of yours and should not enter into or influence your deliberations in any way. You should weigh the evidence in the case and determine the guilt or innocence of the defendant solely upon the basis of such evidence, without any consideration of the matter of punishment.

**DEFENSE OBJECTION TO FINAL JURY INSTRUCTIONS**

1.      While not an objection, the defense notes that it is not possible to state what "defense" instructions" it might ask for at this stage of the case, without benefit of the presentation of the Government's evidence. The remainder of the final instructions have been jointly developed by the prosecution and the defense, and there is thus no disagreement as to the preliminary and final jury instructions included herein.

**PRIOR CONVICTIONS OF THE DEFENDANT THE GOVERNMENT WILL OFFER**

On January 7, 1992, in Montgomery County, Maryland, the defendant was convicted of Assault with Intent to Maim and Use of a Handgun in a Crime of Violence or the Commission of a Felony. On the same date, also in Montgomery County, Maryland, the defendant was also convicted of Robbery with a Dangerous and Deadly Weapon and a related handgun offense. The defendant was released in 2002 and remains on parole.

The Government will provide certified copies of the convictions for use at trial, if it intends to conduct impeachment by prior conviction.

39

## GOVERNMENT'S EXPERT WITNESSES

Anthony Washington

The government anticipates calling a narcotics expert at trial.

The expert may testify -- by providing information or by rendering an opinion -- concerning the following:

(a)  the procedures used by the Metropolitan Police Department for handling narcotics evidence and for safeguarding the chain of custody and integrity of the evidence in narcotics cases.

(b)  the quantitative and qualitative analysis of the narcotics evidence by the DEA and the strength of the substance.

(c)  the methods of using and purchasing narcotics in the District of Columbia, including but not limited to:  the reasons for such methods; the cost (price) of narcotics, both wholesale and retail; the common dosage of, usable and measurable amounts, and strength of narcotics; packaging materials, cutting agents, scales, and paraphernalia for using drugs; the use of stashes, and methods used to avoid detection of narcotics.

(d)  the methods for processing, packaging, selling, transferring and trafficking narcotics in the District of Columbia, including but not limited to the roles of different participants in drug trafficking schemes.

(e)  that beepers, pagers, cellular phones, automobiles, stashes, stash houses, safe houses, crack houses, open air drug markets, couriers, ledgers, safes, and false identities are commonly used in the sale, transfer, processing and trafficking of narcotics in the District of Columbia and elsewhere.

(f) that possession of narcotics for use can be distinguished from possession of narcotics with intent to distribute, and that, for a variety of reasons, possession of numerous individually packaged narcotics, or possession of fewer packages but accompanied by other indicia of sale, is generally more consistent with an intent to distribute than with mere possession for personal use.

The expert will base his/her opinions on the foregoing on his/her years of training and experience in the area of drug investigations.

Specifically, I expect Detective Washington to testify as to the value of the cocaine base both as to its quantity and quality.   Detective Washington will testify that typically such cocaine base is further broken down into .5 ounces, .25 ounces, and .125 ounces.  Such amounts are distributed and further broken down at the street level into $10 and $20 bags.

He would further testify that the cocaine is in rock form; that there are two types of cocaine used in the District of Columbia: powder and cocaine base; that only cocaine base is in rock form, that the exhibit appears to be in rock form and is therefore crack; and that crack is generally smoked by users, is addictive, is widely available in this area, and is cheap.

He will testify that the common dosage of cocaine base in usable and measurable amounts is between 50 and 80 milligrams, which amount sells for about $10, and which dosage is typically packaged in small 1/2 inch square plastic bags.

He will testify that a "31" typically refers to about 31 grams of cocaine base and a "62" typically refers to about 62 grams of cocaine base, and that these are standard terms used by midlevel wholesalers in the industry of the distribution of narcotics in the District of Columbia.

<u>Minh Dang and Connie Klinkham</u>

These individuals are chemists employed by the Drug Enforcement Administration.  They

will testify that the substances sold on March 11, 2005, March 24, 2005, and April 8, 2005, by the defendant are cocaine base in excess of 50 grams each.

## DEFENDANT'S OBJECTIONS TO SCOPE OF TESTIMONY OF GOVERNMENT'S DRUG EXPERT

The defense objects to the wide scope of testimony Detective Washington (or any substitute "drug expert") might be asked to give. This is not a PWID case, wherein economic motive must be shown in order to attribute the intent to distribute to a defendant where, as often occurs, drugs are concealed in a car and the defendant is stopped driving it.

These are straight up videotaped buys of "'62's." There is no need to go into (and thus it is clearly more prejudicial than probative under FRE 403, if probative at all) of the following subsections of the Government's proffer:

( c) Both the wholesale *and retail* pricing of drugs generally;

the common dosage of drugs, usable and measurable amounts, scales and paraphernalia, the use of stashes, and methods to avoid detection of narcotics.

(d) *all* methods for packaging, selling, transferring and trafficking in narcotics in the District of Columbia, apart from the method used in this case.

(e) all of this subsection except that which pertains to the instant case (i.e. use of automobiles and cellular phones to arrange and conduct sales.)

(f) all of this subsection, which pertains to a PWID case, not a distribution case.

The actual proffer of the Government is quite close to what is needed, but Detective Washington has never been known to stick to anything remotely that pertinent, relevant or brief.

Instead he is wont to go on at great length, painting an extremely prejudicial, inflammatory and lengthy portrait of the "drug underworld" of the District.   This violates Rule 403, and is totally inappropriate to the facts of this case.


**DEFENDANT'S EXPERT WITNESSES**

   The Defendant may potentially call Kenneth G. Scott, a fingerprint analyst with at least 33 years of prior experience with the FBI.  He will testify that fingerprints have been lifted from cellophane bags of the size alleged used in this case on many occasions, in contradistinction to the very small ziplocks that are used for dime sales, wherein it is much hard to get a full or a usable print.


**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**


| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | **:** | **CRIMINAL NO. : 05-234 (RMU)** |
| | **:** | |
| | **:** | |
| **v.** | **:** | |
| | **:** | |
| | **:** | |
| **MICHAEL BATTLE,** | **:** | |
| | **:** | |
| **Defendant.** | | |


**VERDICT FORM**

COUNT TWO

On the charge of Unlawful Distribution of 50 Grams or More of Cocaine Base on March 11, 2005, we the Jury find the Defendant:

_____ Guilty                    _____ Not Guilty

COUNT FOUR

On the charge of Unlawful Distribution of 50 Grams or More of Cocaine Base on March 24, 2005, we the Jury find the Defendant:

_____ Guilty                    _____ Not Guilty

COUNT FIVE

On the charge of distribution of 50 grams or more of cocaine base within 1000 feet of an

elementary school, we the Jury find the Defendant:

_____ Guilty     _____ Not Guilty

COUNT SEVEN

On the Charge of Unlawful Distribution of Cocaine Base in the Amount of 50 grams or more of

Cocaine Base on April 8. 2005, we the Jury find the Defendant:

_____ Guilty     _____ Not Guilty

_____

Foreperson

Date: _____

**TRIAL EXHIBITS**

The government will include in its exhibit list the following items.  To the extent possible, it will

provide these exhibits in advance to the Court under separate cover:

1.    Narcotics (3/11/05)

2.    DEA Analysis KJ004 (3/11/05)

3.    Narcotics (3/24/05)

4.    DEA Analysis KI973 (3/24/05)

5.    Narcotics 4/8/05

6.    DEA Analysis KJ518 (4/8/05)

7.    Photograph of defendant on September 30, 2005.

8.    Photograph of Detective Fenton with Measurer

9.    Audio (3/11/05)

10.   Audio Transcript (3/11/05)

11.   Video (3/11/05)

12.   Audio (3/24/05)

13.   Audio Transcript (3/24/05)

14.   Video (3/24/05)

15.   Video Transcript (3/24/05)

16.   Audio (4/8/05)

17.   Audio Transcript (4/8/05)

18.   Video side angle (4/8/05)

19.   Video windshield angle (4/8/05)

20.   Audio (6/16/05)


Respectfully submitted,

BY_____/S/_____

Jeff Pearlman
Room 4213
555 4th Street, N.W.
Washington, D.C. 20530
jeffreypearlman@usdoj.gov
  (202) 353-2385




BY:   _____/S/_____

Frances M. D'Antuono.
Unified Bar No. 358141

218 7th Street, S.E.
Washington, D.C. 20003
(202) 544-6332 (o); (202) 907-6332 (cell)
Fax: (202) 544-6332
fdantuono@msn.com

Counsel for Michael A. Battle

47