UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA  :  CRIMINAL NO. 05–234

:

MICHAEL A. BATTLE                              (RMU)

**DEFENDANT'S MEMORANDUM  IN AID OF SENTENCING**

Comes now the defendant herein, Michael A. Battle, by and though his undersigned counsel, and hereby respectfully files the instant Memorandum in Aid of Sentencing.

**Procedural Posture**

Michael Battle was indicted on three separate drug sales in amounts of roughly 62 grams each.  These sales were alleged to have occurred on or about March 11, 2005, March 24, 2005 (an offense which was alleged to have occurred within 1000 feet of Rudolph Elementary School, for which Mr. Battle was indicted as well) and April 8, 2005.  Indicted counts relating to use of the telephone were dismised by the Government just prior to trial.

After trial, the jury rendered its verdicts on April 11, 2008, acquitting Mr. Battle of the March 11th offense and of the April 8th offense, but convicting him of both offenses occurring on March 24, 2005, that is, distribution of 50 grams or more of cocaine base and having done so within 1000 feet of a school.

**Relevant Conduct**

At the outset, this Court must consult the now-advisory U.S. Sentencing Guidelines, United States v. Dorcely, 454 F.3rd 366, 375 (D.C. Cir. 2006 ("In the post-Booker world, the

1

[sentencing court] must "calculate and consider the applicable guideline range but is not bound by it."); 18 U.S.C. 3742(f). However, at least given the current state of the law, as an initial matter the guideline range must be determined by findings as to additional relevant conduct, if any, a determination to be made not by the Pre-Sentence Report writer but by the Court. See United States v. Lawson, 494 F. 3d 1046, 1055-56 (D.C. Circuit 2007). See also United States v. Ginyard, No. 06-3162 (D.C. Cir. January 4, 2008). Under these cases, [1] only the drug quantities that constitute essential elements of the offense - in this case 50 grams or more of cocaine base - must be submitted to the jury for determination beyond a reasonable doubt. Beyond that, the actual quantities involved in acquitted, uncharged or other potentially pertinent conduct are relevant only to sentencing and may be determined by the court under a preponderance of the evidence standard. Id.

Thus, while this Court is permitted under these cases, without traducing the Sixth Amendment and Apprendi v. New Jersey, 530 U.S. 466 (2000), to include acquitted conduct, it is not required to do so if it does not find a sufficient basis in fact.

---

[1] Undersigned counsel acknowledges that these cases represent the current state of the law in this and other circuits. But, as she did with the pre-sentence report writer, because the D.C. Circuit cases are not *en banc* opinions so far as she has been able to ascertain, and are subject to change in any event under possible future developments in the law, she preserves her objection to the use of acquitted conduct under any standard of proof in calculating Mr.Battle's guideline sentence, in the event that, should the law indeed undergo a favorable change, Mr. Battle may have the benefit of retroactive effect.

**Mr. Battle's Acquitted Conduct**

Undersigned counsel submits that the alleged conduct underlying Mr. Battle's acquitted charges should not be used as part of a determination of the appropriate guideline range for his sentence.  While the Government argues that he is "clearly visible on the videotapes," that is not the case.  The March 11, 2005 tape does not clearly depict Mr. Battle.  Neither does the April 8th tape.  While these tapes a depict person who resembles Mr. Battle in the gross physical sense, they are insufficiently clear for the determination to be made with any certainty that the person on the tapes *is* Mr. Battle, precisely as the jury found in rendering its verdicts of acquittal.

Moreover, the photograph identified by the undercover officer as being Mr. Battle (shown to him in January of 2005 to confirm that he could recognize Michael Battle) does not resemble Mr. Battle at all.  Thus, the undercover's identification of Mr. Battle at as the person who sold him the drugs is gravely suspect.  Unless Mr. Battle engaged in a serious eating binge so as to gain 100 pounds between January 24 and March 11th - unlikely in the extreme - and, even more importantly, unless his neck was stretched by several inches (virtually impossible), unless his complexion, the shape of his eyes, nose, mouth, the spacing thereof  etc. was physically altered in that time period, the identification of the person in the photograph shown to the undercover by Detective Fenton (who did not see Mr. Battle until his arrest, as elicited at trial) does not hold up.

The jury obviously understood this, as it rejected the undercover's litany of in court identifications of Mr. Battle, relying – clearly – on the tapes, not upon the testimony of Darrick Wallace, and they rejected these identifications for good reason, as they had both Mr. Battle's

3

arrest photo, the photo allegedly of Mr. Battle shown in January, and the tapes to view repeatedly during deliberations.

Further, although the Government makes much in its submission to the Court of calls to a person alleged to be Mr. Battle, particularly with regard to a failed attempt to arrange a sale in June of 2005, no evidence was submitted at trial that the telephone number being called belonged to Mr. Battle at all, nor was any voice print analysis or lay voice comparison or identification submitted into evidence or ever brought before this Court that the voice was in fact that of Michael Battle at all.

In addition, there is no evidence that the drugs were in fact fingerprinted, lest the prints of someone else be found and Mr. Battle's be absent from the bags which he clearly allegedly handled on the tapes. This forms another indication of the lack of reliability of the acquitted conduct as relevant conduct.

For all these reasons, and all other points argued at trial, undersigned counsel submits that this Court should not use the acquitted conduct in its calculation of the appropriate guideline range for Mr. Battle. [2]

Thus, given that Mr. Battle has a criminal history category of III, his guideline range for the two offenses of conviction, the amount of drugs being 60.3 grams, should be 135-168 months (11.25 - 14 years), rather than the 168-210 months (14 -17.5 years) derived by the Pre-

---

[2] Undersigned counsel has asked the Pre-Sentence report writer to prepare an Addendum to her report, to present both sets of Guideline ranges to the Court, so that it can decide this issue appropriately. This practice was followed in Lawson with the apparent approval of the Court of Appeals, which said that upon challenge by defense counsel (which undersigned counsel did in her first set of proposed corrections and objections to the PSR, emailed to the pre-sentence report writer) both sets of guidelines should be calculated - one containing all "relevant" drug quantities, and one containing only the quantity of conviction.

Sentence Report writer in her initial report by aggregating the drugs quantities from all three alleged sales.

**The 3552(a) Factors**

The Government has clearly set out in order in its sentencing papers the well-known factors for the Court to consider under 18 U.S.C. Section 3553(a ).  Undersigned counsel  will not repeat the categories of consideration here, but will address those which are pertinent on the facts.

While Mr. Battle was convicted of a drug offense, specifically distribution of crack cocaine, the offense, whether or not the offense of conviction alone or the other acquitted offenses also are considered, in no way involved violence,  gun-carrying, nothing of a "dangerous" nature whatsoever on Mr. Battle's part.   Secondly, with respect to the way in which the offense was committed, the undercover always made contact with the suspect, rather than the other way around.  In other words, the undercover actively solicited the offense conduct.  For a person in Mr. Battle's situation, taking the jury verdict on the March 24th incident as correct ( as we must unless and until it is overturned), the solicitation is an open invitation to temporarily solve a problem with the only readily available means, to wit his homelessness.

It should be remembered that – as amply documented in the pre-sentence report - Mr. Battle worked assiduously at a variety of jobs after his release from his Maryland sentence. Many times he worked multiple jobs at one time.  He ultimately entered the apprenticeship program at Local 100 of the Sheet Metal Workers, and remained in that program from 2001 until October of  2004.  See PSR at para. 67, p. 13.  According to Mr. Battle's mother, he was unable to pass the exam to graduate from apprenticeship to the lowest tier of journeyman status,

although he took the exam more than once. Mrs. Battle indicates that Michael became very despondent at that point. Although he was kept on the union roles at Local 100 for a time, he would have to keep taking the test and pass it in order to continue being sent out to work, and he apparently fell into a substantial depression.

He had tried so very hard to put his life back together, according to his mother, upon being released from his Maryland sentence, and her view is corroborated by his quite extensive post-incarceration work history. After losing his position at Local 100, he became literally homeless, sleeping on floors, benches, in cars, anywhere that he could. Yet, he still applied and was accepted to a vocational school.[3] He didn't give up, even though things had become extremely difficult for him.

Thus it is that, even accepting for the present the jury's finding of guilt on the March 24th offense, Mr. Battle was in dire need of money, sustenance and aid at the time of the offense, and if he did sell drugs, that behavior occurred only after he had lost his job, was homeless and was faced with trying to keep body and soul together. It also appears that if he did sell drugs in "62" quantities, he most likely did so for another person, making little profit himself.

This is borne out by the fact that, at his arrest, he had nothing of value whatsoever: no fine clothing, no closet full of expensive tennis shoes, no jewelry, no fancy car, nothing of the nature typically possessed by a mid to lower level but above street level distributors of crack.

Indeed, Detective Fenton indicated on cross examination at trial that he "believed" he had

---

[3] Undersigned counsel and her investigator had the documentation for this, and were prepared to use it at trial in the event that Mr. Battle chose to testify, but his mother asked that his documents be returned to her right after trial, so that she could take them back to North Carolina with her. Thus, undersigned counsel does not have a copy give to the court and the Government at this time.

procured a warrant for the residence of Mr. Battle's sister, Sherree, a place he was at times permitted to sleep and very near where the transactions were alleged to have occurred. This search apparently turned up no stash, no forfeitable personalty, and nothing of value. Mr. Battle's car was most definitely seized and searched at arrest (an old car at that) and, again, nothing of value was found therein, nor any contraband either nor any of the accoutrements of the drug trade.

Undersigned counsel submits that, as to the need for the sentence to reflect the seriousness of the offense, that there should be a difference between those who commit crimes purely for economic gain, and those who fall upon desperate times and resort to drug sales as a short term resolution. It is almost as tragic that we provide little, if any, support as a society to ex-offenders, leaving them to their own devices to put back together their broken lives and to surmount the burden of their prior convictions, as is the fact that the ready availability of street drugs brings about and perpetuates addiction with all of its ills. If Mr. Battle sold drugs, he falls into the latter, rather than the former category of seller.

As for his prior offenses, Mr. Battle has indicated to undersigned counsel [4] that he was present at these offenses, not the principle, but that because the principles, who were juveniles, were prepared to testify against him and say that he committed the crime, he asked his lawyer for a combined plea, and took it. Mr. Battle was 19 years old at the time. This method of dealing with his situation, although unsophisticated, is quite understandable. Undersigned counsel has never been able to obtain a transcript of the plea, or even the file from Montgomery County,

---

[4] Mr. Battle and his counsel agreed during the pre-sentence interview that this issue would be addressed in his sentencing papers.

Maryland, to research these matters, as the case is so old. But, it appears that what is reported out in the pre-sentence report represents the initial police report and not the product of a completed investigation.

Undersigned counsel is very much inclined to believe Mr. Battle when he says that he was not the principle, because he has never behaved in a violent manner towards her, [5] nor exhibited any violent traits, nor has he any convictions of a violent nature prior to the Maryland case.

Based upon all the foregoing arguments, if this Court decides to impose a sentence based upon the sentencing guidelines, undersigned counsel asks this court to impose a sentence at the very lowest end of the guidelines, 135 months, according the acquittals their full and proper effect.

In the alternative, if the Court should insist upon applying the higher guideline ranges, undersigned counsel submits that a sentence at the very bottom of those guidelines, that is, 168 months (fully 14 years), fully satisfies all of the 3553(a) factors.

---

[5] Although there were certainly issues between Mr. Battle and defense counsel which were aired in the competency proceedings and renewed positions about the Defendant's competency just prior to trial, these never involved the slightest bit of violence on the part of Mr. Battle. He became loud, but never once threatening or violent. Moreover, when the subject of how to defend the case was discussed, Mr. Battle was always completely courteous. It was only when undersigned counsel emphasized the difficulties of so doing, perhaps telegraphing to him inadvertently (and incorrectly) that she would not be his genuine, full bore advocate, that he became upset. Having represented many violent offenders for as many years as she has, it is not difficult for undersigned counsel to perceive the difference between a violent offender and a person who becomes loud and frustrated, but not violent.

**Crack/Powder ratio**

Furthermore, Mr. Battle objects to any sentence predicated upon the current crack/powder ratio now in effect and justifiably under so much attack and scrutiny by the U.S. Sentencing Commission and the Congress alike, with a variety of bills currently pending in the Congress to alleviate the gross inequities brought about by the disparity.  See Kimbrough v. United States, 128 S.Ct. 558 (2007) and discussion therein critical of the crack/powder ratio and its origins, and discussing at length the Sentencing Commission's efforts to eliminate and/or substantially change the ratio.  Despite the meager two level reduction ultimately proposed by the U.S. Sentencing Commission, accepted by the Congress and now in effect, as Kimbrough is at pains to point out, the crack powder ratio still ranges between 25-1 and 80-1, giving high level sellers of powdered cocaine far lesser sentences than mid or lower level sellers of crack.  Based upon all the literature and argument that has been produced as to the inequitable racial and other disparities produced by this sentencing scheme, Mr. Battle, as a 3553 (a) factor, asks that the Court, in recognition of the great disparity produced by the crack guidelines, sentence Mr. Battle to the statutory mandatory minimum sentence of ten years, making a determination that a "within-Guidelines"sentence would be greater than necessary to serve the objectives of sentencing.

Undersigned counsel asks this pointing out the following:  if the Court were to use the 1:1 ratio, eliminating any disparity between crack and powder cocaine at sentencing, in determining Mr. Battle's guideline level, this would result in a base level for the March 24th conviction (not aggregating any acquitted conduct) of 30-37 months (at least 50 grams but less than 100 grams of cocaine, which is a level 16, plus 1 for the commission of the offense with a protected school

zone.)  U.S.S.G. 2D1. ( C) 12; U.S.S.G. 2D1.2(a)(2) .

Even if the Court were to consider the acquitted conduct as well, taking all three alleged offenses in the aggregate, at 179.3 grams, the sentence would place Mr. Battle at a level 18 (33-41 months) plus 1 for commission of the offenses in a protected area, for a total of 37-46 months.  U.S.S.G. 2D1.1 ( C) (11); U.S.S.G. 2D1.2(a)(2).

The mandatory sentence of ten years is more than twice what a person selling powder cocaine in Mr. Battle's position would receive under the just recited guidelines.  The sentence proposed by the Government of 17 years is more than four times what a person selling powder cocaine would receive.  Given these values, the sentence proposed by the Government and the use of the guidelines at all in determining Mr. Battle's sentence would result in a sentence "greater than necessary" to accomplish the purposes set forth in 18 U.S.C. 3553(a) and would exemplify the unjust effect that crack cocaine guidelines have at sentencing.  *See* <u>Kimbrough</u>, *passim*.

As the United States Sentencing Commission itself has found, after studying the question very closely over a number of years, the crack/powder disparity is "inconsistent with the 1986 Act's goal of punishing major drug traffickers more severely than low level dealers" (1995 Report of the Sentencing Commission at 66-67) and "fosters *disrespect* for and lack of confidence in the criminal justice system" because of a "widely held perception" that it "promotes unwarranted disparity based on race." (2002 Report of the Sentencing Commission at 103) (emphasis supplied).

For all of the above stated reasons, Mr. Battle's counsel respectfully requests that he be sentenced to the mandatory minimum sentence of ten years.

Respectfully submitted,

_____/S/_____
Frances M. D'Antuono
Unified Bar No. 358141

218 7th Street, S.E.
Washington, D.C. 20003
(202) 544-7633
(202) 544-6332 (Cell)
fdantuono@msn.com

Counsel for Michael A. Battle

## Certificate of Service

I hereby certify that a true and accurate copy was served by electronic filing upon Jeffrey Pearlman, Esquire, United States Attorney's Office, Narcotics and Organized Crime Section, 555 4th Street, N.W., Washington, D.C. 205530, and upon the chambers of the Honorable Ricardo M. Urbina, United States District Judge and Presiding Judge in the case, this 16th day of June, 2008.

_____
Frances M. D'Antuono